# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

(To be supplied by the court)

**LESLEY T. OWENS** _____, Plaintiff

v.

**UNITED STATES OF AMERICA**

_____

_____

_____, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**APR 17 2020**

JEFFREY P. COLWELL
CLERK

---

## PRISONER COMPLAINT

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

## A.  PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.*

Lesley T. Owens #22409-076, USP Florence, P.O. BOX 7000, Florence, CO 81226
(Name, prisoner identification number, and complete mailing address)

_____
(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

___  Pretrial detainee
___  Civilly committed detainee
___  Immigration detainee
___  Convicted and sentenced state prisoner
✓  Convicted and sentenced federal prisoner
___  Other: *(Please explain)* _____

## B.  DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint.  If more space is needed, use extra paper to provide the information requested.  The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:   United States of America/employees (Counselor C. Lewis)
(Name, job title, and complete mailing address)   and Unit Team members

F.C.I. Florence, P.O. BOX 6000, Florence, CO 81226

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ✓ Yes ___ No *(check one)*.  Briefly explain:

In the matter named federal employees mentioned in this suit were acting under color of federal law

Defendant 1 is being sued in his/her ___ individual and/or ✓ official capacity.

Defendant 2: _____

                 (Name, job title, and complete mailing address)

_____

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*). Briefly explain:

_____

_____

Defendant 2 is being sued in his/her ___ individual and/or ___ official capacity.

Defendant 3: _____

                 (Name, job title, and complete mailing address)

_____

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*). Briefly explain:

_____

_____

Defendant 3 is being sued in his/her ___ individual and/or ___ official capacity.

## C.   JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

___   42 U.S.C. § 1983 (state, county, and municipal defendants)

___   *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal defendants)

✓   Other: (*please identify*) (FTCA) Federal Tort Claims Act

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: LAWSUIT UNDER FEDERAL TORT CLAIMS ACT SUING THE UNITED STATES FOR LIABILITY IN CONNECTION WITH INJURY DAMAGES CAUSED BY GOVERNMENT EMPLOYEES WHILE ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT

Supporting facts:

COMES NOW, Plaintiff Lesley T. Owens, (hereinafter "Owens") moves this Honorable Court pursuant to (FTCA) Federal Tort Claims Act suing the United States for injury damages caused by government employees while acting within the scope of their employeement. 28 U.S.C. §1346(b)(1).

## I. FTCA LAW

The FTCA is a limited waiver of the sovereignty of the United States to be sued. See United States v. Orleans, 425 U.S. 807, 813, 96 S. Ct. 1971, 48 L. Ed. 2d 390 (1976) "The FTCA list many types of claims for which the United States has consented to be sued. Sydnes v. United States, 523 F. 3d 1179, 1183 (10th Cir 2008) "Included among those are

4

(1)

# D. STATEMENT OF CLAIMS

claims for certain injuries caused by government employees acting within the scope of their employment." Id.

Thus, the FTCA "waives sovereign immunity for actions against the United States resulting from injuries caused by the negligent acts of governmental employees while acting in the scope of their employment." Garcia v. United States Air Force, 533 F.3d 1170, 1175 (10th Cir. 2008) (citing 28 U.S.C. §1346 (b)(1)).

Under the FTCA, the government can be sued "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346 (b). Thus, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." Tisdale v United States, 62 F.3d 1367, 1371 (11th Cir. 1995)(quoting U.S.C. §2674).

(2)

## D. STATEMENT OF CLAIMS

The duty of the United States in a tort action is defined in accordance with the law of the state where the negligence occurred. Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed 2d 492 (1962). Because the alleged negligence occurred in Colorado, the Court applies Colorado law. Levin v. United States, 133 S.Ct. 1224, 1228, 185 L.Ed 2d 343 (2013).

## II. COLORADO LAWS

(a). In Colorado, negligence claims are subject to a two-year statute of limitations, which begins running "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." C.R.S. §13-80-102 (1)(a); C.R.S. §13-80-108 (1).

(b). The elements of a claim of negligence under the substantive law of Colorado consist of (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) injury to

(3)

## D. STATEMENT OF CLAIMS

the plaintiff, and (4) a proximate cause relationship between the breach and the injury. <u>Casebolt v. Cowan</u>, 829 P. 2d 352, 356 (Colo. 1992) While the existence and scope of a duty is a question of law, the issues of breach of duty and causation are generally questions for the jury. Observatory Corp. v. Daly, 780 P. 2d 462, 466 (Colo. 1989). However when the "facts are undisputed and reasonable minds could draw but one inference from them," breach of duty and causation become questions of law for the court. <u>Gibbons v. Ludlow</u>, 304 P. 3d 239, 244, 2013 CO 49 (Colo. 2013)

## (C). COLORADO PREMISES LIABILITY ACT

Owens is suing the United States for personal injuries under the Colorado Premises Liability Act (CPLA) which defines the duty that landowners owe to persons on their property and holds landowners responsible for causing injury

(4)

# D. STATEMENT OF CLAIMS

to persons on their property as specified therein. see Colo. Rev. Stat. §13-21-115.

Under the CPLA, landowners owe certain duties to those who come on the land depending on their status as a trespasser, licensee, or invitee. (Colo. Rev. Stat. §13-21-115). In this matter Owens qualifiees as an invitee under the (CPLA). (citing Carson v. Corr. Corp. of Am., 2011 U.S. Dist. Lexis 47208 (D. Colo. May 3, 2011) (finding that an inmate qualifies as an invitee) A plaintiff, as an invitee, "may recover for damages caused by the landowners unreasonable failure to exercise reasonable care to protect against dangers of which he or she actually knew or should have known." (Colo. Rev. Stat. §13-21-115 (3)(c)(1).

In this matter Owens stipulates that following next statement of claims support all the aforementioned Colorado laws mentioned previously.

(5)

## D. STATEMENT OF CLAIMS

## III. BACKGROUND SUMMARY OF INJURIES CAUSED BY THE NEGLIGENT ACTS OF GOVERNMENTAL EMPLOYEE COUNSELOR LEWIS AND NAMED UNIT TEAM MEMBERS WHILE ACTING IN THE SCOPE OF THEIR EMPLOYMENT

On Febuary 13, 2019 between 12:30 a.m. through 1:00 a.m. I fell off the upper bunk I was assigned to by Counselor C. Lewis while attempting to come down to utilize the tiolet in cell. During the fall I sustained a laceration on my forehead in length (3 cm) and depth (10 mm) with swelling. I also had to go to the emergency room for this injury to get seven stitches to close the laceration. My right knee was injuried as well with pain and swelling which had already been previously diagnosis at FCC Lompoc through MRI to have meniscus tears laterally and medially along with ACL tears as well. In the matter the fall re-aggravated and possibly may even futher tore my meniscus and ACL. See attached (record from St. Thomas More Hospital) also see attached (record from MRI diagnosis Lompoc Valley Medical Center). Note: The reason I was approved for lower bunk requirements in the FBOP is because of the problems I have with my right knee which recently I was approved to see a orthopedic doctor and approved for orthopedic surgery. see (on aforementioned approval on my medical file).

After coming back from the hospital emergency room I was placed back inside the same cell were I was assigned to the upper bunk. Afraid to get on the upper bunk I was still assigned to I had to pull my mat off the upper bunk and sleep on the floor in the cell while my entire body was sore from the fall. I had to sleep on the floor two days after the injury while sore, because Counselor C. Lewis did not re-assign me to another cell to a lower bunk until Febuary 15, 2019  See (Change Sheet were I recieved cell change from 305 upper bunk to 404 lower bunk which was a upstairs cell that my medical status goes against also, because my lower bunk pass states clearly no stairs.

In the above matter upon my arrival to FCI Florence I advised Counselor C. Lewis in R&D on Febuary 1, 2019 that I have a lower bunk requirements. I was assigned to her Unit O/B cell 305 upper after the fact I told her I have lower bunk requirements

(b)

## D. STATEMENT OF CLAIMS

on file that support my medical status. see attached (BOP H.S. Medical Status of Lesley Owens #22409-076) On Febuary 11, 2019 Conroy, S.DO of FCI Florence did an assessment of all my previous lower bunk requirements(pass) although none of my requirements had expired she approved a new lower bunk requirement(pass) for FCI Florence housing assignments. See attached (BOP H.S. Medical Status of Lesley Owens #22409-076 at FCI Florence generated by Conroy, S.DO, Florence H.S. Dept.)

On Febuary 12, 2019 my intial Unit Team meeting with Counselor C. Lewis and Case Manager Mansfield of O/B Unit I expressed yet again for a lower bunk. See attached (Individualized Reentry Plan-Program sheet 2-12-2019 Unit Team gave me which acknowledges **Lower Bunk Requirement clearly**).

Here counselor fail to assign me to a lower bunk constituting deliberate indifference, but also wanton negligence by counselor due to the fact Counselor C. Lewis refused to follow the medical instructions in my central file, all records show that I have lower bunk requirements. The aforementioned shows that counselor's willful wanton negligence satisfies Program Statement No. 3420.11 see(15) **Endangering the safety of or causing injury to staff, inmates, or others through carelessness of failure to follow instructions.** see P.S. 3420.11 Standards of Employee Conduct

In this matter, the injury from hitting my head I sustained memory lost of the date my incarceration took place, why I was incarcerated and other things about my case. I had to look into my legal materials to find answers. I could not remember people at my last institution USP Lompoc. FCI Florence **Psychology Dr. Martin** took note and recorded it the above, it is in my central file now.

In this matter on or around the time of my administrative filings I asked Unit Manager Ms. Gempler of FCI Florence's, M-Unit whom was present during my arrival Febuary 1, 2019, who did my bed assignments that day. Gempler explained her and Lewis switch every quarter, but it was Lewis' quarter she assigned you.

(7)

## D. STATEMENT OF CLAIMS

In this matter Owens stipulates that his administrative tort claim he filed with the North Central Regional Office on the SF-95 form was for $250,000.00 and on that forms second continuation page he cited (wanton negligence) by counselor twice based on the facts Counselor C. Lewis and Unit Team refused on Owens arrival February 1, 2019 and during his initial Unit Team meeting with case manager Ms. Mansfield on February 12, 2019. he awared both staff members he needed a lower bunk because of his medical status which was approved for a lower bunk according to Owens' Individualized Reentry Plan - Program sheet which was viewed and signed by Unit Team Counselor C. Lewis, Case Manager Ms. Mansfield and Unit Manager Tucker. see attached (SF-95 form) and (Individualized Reentry Plan Program sheet (Medical Duty status section)).

(8)

## D. STATEMENT OF CLAIMS

## IV. DAMAGES GENERALLY

"Trial courts are vested with broad discretion in awarding damages, and appellate courts do not lightly engage in a review of a trial court's actions." Dolenz v United States, 493 F.3d 1320, 1321 (10th Cir. 2006).

Under Colorado law, once the fact of damage has been established with the requisite degree of certainty, uncertainty as to the amount of damages will not bar recovery. Sonoco Prods. Co. v Johnson, 23 P.3d 1287, 1290 (Colo. App. 2001). However, under the FTCA, this court is required to access damages according to the law of the state in which the

(9)

## D. Statement of Claims

tort occurred. See 28 U.S.C. §1346(b).

The FTCA specifies that the United States shall be liable under the Act "in the same manner and to the same extent as a private person individual under like circumstances." 28 U.S.C. §2674. Because the negligence occurred in Colorado, the right to recovery under the FTCA is determined by the substantive law of Colorado. Hanceesa v. United States, 309 F.3d 722, 724 (2002).

(a) Categories of Damages

There are three separate categories of loss for which damages may be awarded in a personal injury action in Colorado — economic damages, noneconomic damages, and damages for physical impairment or disfigurement. Cooley v. Paraho Dev. Corp., 851 P. 2d 207, 210 (Colo. App. 1992)

## D. Statement of Claims

### (b) Damages

(1) <u>Physical impairment or disfigurement</u> of face on right side of forehead from laceration that required (7) seven stitches, because the laceration was (3 cm) in length and (10 mm) in depth. The described scar is now a disfiguring mark and blemish on Owens' face for the rest of his life that has marred or spoiled his facial appearance.

(2) <u>Mental Pain and Suffering</u> based on the emotional stress, inconvenience and impairment of the quality of life, because the presence of the aforementioned scar of face has caused Owens lack of confidence in his facial appearance due to trials of depression.

(3) <u>Physial impairment or disfigurement</u> of left elbow with continued <u>Chornic Pain everyday</u> from Chornic bursitis and some palpable bursa and spurring of the olecranon. <u>see</u> Attached Exhibits generated by Maurice Yu, MD (Statrad Examination) and Jacob Patterson, MD (St. Thomas Moore. Orthopedic Services)

(11)

Owens submits he is still having complications from the left elbow everyday with pain, swelling from fluid, which is now complicating the movement of his elbow joints as of late 2019 after diagnosis. Owens and his Mid level Health Services Provider are having follow-ups at USP Florence. Owens submits surgery is now a option, because of the disfigurement of his left elbow. Surgery was the last discussion Owens had with his Mid level Provider at the Institution. In that discussion his Mid level Provider printed out Patient Education in regards to his Bursitis Diagnosis. <u>see</u> Attached Patient Education. This diagnosis has already effected Owens dialy and is continuing to get worser.

(4) <u>Physical and mental pain and suffering, inconvenience, emotional stress, impairment of the quality of life</u>, because my left elbow is deformed now and it effects me mentally based on the fact of its appearance to myself and others. I'm questioned now dialy by inmates in the institution about my left elbow, this emotionally distrubs me, also I'm ashame of it, because it looks and is deformed. This disfigurement is inconvenience and it will affect me in everyway described in the future as I continue to live. Also it will affect me working a job doing labor in the workforce. Continued treatment will cost me money I can't afford.

(12)

(5) Mental Pain, suffering, inconvenience, emotional stress, impairment of the quality of life, based on the fact the head trauma caused me to suffer memory lost for a few days. The memory was restored from me looking at my legal materials, photos, and other items in my personal property, but my ability to comprehend and process materials such as educational skill materials or paralegal materials etc. are slower than it use to be. I've talked to FCI Florence's psychology Department Dr. Martin, she to a report. Also I requested a scan of my brain to see what is wrong with my mentally, because I'm functioning on a slowly level now with comprehension and processing materials. The brain scan I request through F.C.I. Florence's Health Services Dept. Mid Level provider Ms. Fabrony. She made note of this request. I feel this issue will cause continued suffering, mental pain, inconvenience, emotional stress and impair the quality of my continued dialy life and life in the future with maintaining a decent job. Also I will need some type of treatment from a form of Health Services which will cost me money in the future. The Federal Bureau of Prisons are not adequately helping me, as of today I still haven't

(13)

recieved any care or treatment for this problem after I made request.

(6) <u>Physical Pain</u> associated with re-aggravated injury of right knee, since I hit my knee on the floors after falling 2/13/2019. I've continued to have pain and swelling in my right knee.

**E.     PREVIOUS LAWSUITS**

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ___ Yes ✓ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit. Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS." .*

Name(s) of defendant(s): _____

Docket number and court: _____ N / A _____

Claims raised: _____

Disposition: (is the case still pending? has it been dismissed?; was relief granted?) _____

Reasons for dismissal, if dismissed: ____ N / A ____

Result on appeal, if appealed: _____


**F.     ADMINISTRATIVE REMEDIES**

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

   ✓ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

   ✓ Yes ___ No (*check one*)

**G.    REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

I'm requesting the sum of monies for damages from injuries described within or the sum of monies this Court feel approiate at it's decretion that I deserved for injury damages under the (F T C A) and Colorado Laws.

**H.    PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

April 9, 2020
_____
(Date)

(Form Revised December 2017)

6

## Certificate of Service

I hereby certify that a copy of the foregoing pleading / document was mail to the U.S. Attorney's Office, 1801 California, Denver, CO, 80 202 on this 9th day of April 2020.

/s/ Lesley T. Owens #22409-076

Date April 9, 2020



**U.S. Department of Justice**
Federal Bureau of Prisons

*North Central Regional Office*

---

*Office of the Regional Counsel*                    *400 State Avenue*
                                                    *Tower II, Suite 800*
                                                    *Kansas City, KS  66101*

November 20, 2019

Lesley Owens, #22409-076
Federal Correctional Institution
P.O. Box 6000
Florence, CO  81226

RE:   Tort Claim TRT-NCR-2019-04995
      Amount of Claim:  $250,000.00

      Certified Mail Receipt No:   7015 0640 0005 8894 1729

Dear Claimant:

Your above referenced tort claim has been considered for administrative review
pursuant to 28 C.F.R. § 0.172, <u>Authority: Federal Tort Claims</u> and 28 C.F.R. Part 14,
<u>Administrative Claims under Federal Tort Claims Act</u>.  Investigation of your claim did not
reveal that you suffered any personal injury as a result of the negligent acts or
omissions of Bureau of Prisons employees acting within the scope of their employment.

As a result of this investigation, your claim is denied.  This memorandum serves as a
notification of final denial under 28 C.F.R. § 14.9, <u>Final Denial of Claim</u>. If you are
dissatisfied with our agency's action, you may file suit in an appropriate U.S. District
Court no later than 6 months after the date of mailing of this notification.

Sincerely,

Richard M. Winter
Regional Counsel

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| North Regional Office<br>Gateway Complex Tower II, 8th Floor<br>400 State Avenue<br>Kansas City, KS 66101-2492 | Lesley T. Owens 22409-076<br>F.C.I. FLORENCE<br>P.O. BOX 6000<br>Florence, CO 81226 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☐ CIVILIAN | 4. DATE OF BIRTH<br>1-6-1971 | 5. MARITAL STATUS<br>Single | 6. DATE AND DAY OF ACCIDENT<br>2-13-2019 (wednesday) | 7. TIME (A.M. OR P.M.)<br>(between)<br>12:30am-1:00am |
|---|---|---|---|---|

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

**This injury I sustained arose through the negligent or wrongful act or omission of a government employee while acting within the scope of her employment. Acting employee: Counselor C. Lewis of FCI Florence**

**See additional pages attached in connection with this section.**

| 9. PROPERTY DAMAGE |
|---|
| NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code). |
| BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side). |

| 10. PERSONAL INJURY/WRONGFUL DEATH |
|---|
| STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT. Forehead laceration which required 7 stitches, right knee contusion w/swelling, memory loss from head injury see attached page w/exhibits BP-8, BP-9  In the matter I also sustained left elbow and neck injury See X-Rays attached with description of all details of incident and history. |

| 11. WITNESSES | |
|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| Jose Herrerra 43680-424 | FCI FLORENCE<br>P.O. BOX 6000<br>Florence, CO 81226 |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars). | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|  | $250,000.00 |  | $250,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *Lesley T. Owens* |  | 3-10-2019 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2



## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes   ☒ No   | 17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?  (It is necessary that you ascertain these facts.)

**N/A**

19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☒ No

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a seperate claim form.

Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

### PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A.  *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose:* The information requested is to be used in evaluating claims.
C.  *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond:* Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

### PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention:  Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.



STANDARD FORM 95 REV. (2/2007) BACK

CONTINUATION PAGE FOR **SECTION (8)**
CLAIM FOR INJURY FORM

On Febuary 13, 2019 between 12:30 a.m. through 1:00 a.m. I fell off the upper bunk

I was assigned to by Counselor C. Lewis while attempting to come down to utilize

the tiolet in cell. During the fall I sustained a laceration on my forehead in

length (3 cm) and depth (10 mm) with swelling. I also had to go to the emergency

room for this injury to get seven stitches to close the laceration. My right knee

was injuried as well with pain and swelling which had already been previously

diagnosis at FCC Lompoc through MRI to have meniscus tears laterally and medially

along with ACL tears as well. In the matter the fall re-aggravated and possibly

may even futher tore my meniscus and ACL. See attached (record from St. Thomas More

Hospital) also see attached (record from MRI diagnosis Lompoc Valley Medical Center).

Note: The reason I was approved for lower bunk requirements in the FBOP is because of

the problems I have with my right knee which recently I was approved to see a

orthopedic doctor and approved for orthopedic surgery. see (on aforementioned

approval on my medical file).

After coming back from the hospital emergency room I was placed back inside the same

cell were I was assigned to the upper bunk. Afraid to get on the upper bunk I was

still assigned to I had to pull my mat off the upper bunk and sleep on the floor

in the cell while my entire body was sore from the fall. I had to sleep on the

floor two days after the injury while sore, because Counselor C. Lewis did not

re-assign me to another cell to a lower bunk until Febuary 15, 2019. See (Change

Sheet were I recieved cell change from 305 upper bunk to 404 lower bunk which was

a upstairs cell that my medical status goes against also, because my lower bunk

pass states clearly no stairs.

In the above matter upon my arrival to FCI Florence I advised Counselor C. Lewis

in R&D on Febuary 1, 2019 that I have a lower bunk requirements. I was assigned to

her Unit O/B cell 305 upper after the fact I told her I have lower bunk requirements

(1)

on file that support my medical status. see attached (BOP H.S. Medical Status of
Lesley Owens #22409-076) On Febuary 11, 2019 Conroy, S.DO of FCI Florence did an
assessment of all my previous lower bunk requirements(pass) although none of my
requirements had expired she approved a new lower bunk requirement(pass) for
FCI Florence housing assignments. See attached (BOP H.S. Medical Status of Lesley
Owens #22409-076 at FCI Florence generated by Conroy, S.DO, Florence H.S. Dept.)

On Febuary 12, 2019 my intial Unit Team meeting with Counselor C. Lewis and Case
Manager Mansfield of O/B Unit I expressed yet again for a lower bunk. See attached
(Individualized Reentry Plan-Program sheet 2-12-2019 Unit Team gave me which
acknowledges **Lower Bunk Requirement clearly**).
Here counselor fail to assign me to a lower bunk constituting deliberate indifference,
but also wanton negligence by counselor due to the fact Counselor C. Lewis refused
to follow the medical instructions in my central file, all records show that I have
lower bunk requirements. The aforementioned shows that counselor's willful wanton
negligence satisfies Program Statement No. 3420.11 see(15) **Endangering the safety of**
or causing injury to staff, inmates, or others through carelessness of failure to
follow instructions. see P.S. 3420.11 Standards of Employee Conduct

In this matter, the injury from hitting my head I sustained memory lost of the date
my incarceration took place, why I was incarcerated and other things about my case.
I had to look into my legal materials to find answers. I could not remember people at
my last institution.USP Lompoc. FCI Florence **Psychology Dr. Martin** took note and
recorded it the above, it is in my central file now.

(2)

*This is a copy of the original BP-8 that was submitted to Unit Manager Tucker on or about 3-12-2019 which he claims got lost Tucker orginally sttated AWSA Ms. Brush had the BP-8*

FLORENCE, COLORADO
INFORMAL RESOLUTION FORM

*Notice to Inmate: Inmates have the responsibility to use this Program in Good Faith and in an Honest and Straightforward manner.*

Inmate Name: __Lesley T. Owens__      Reg. No. __22409-076__
Unit: __O/B__        Date: __3-12-2019__

NOTICE TO INMATE: You are advised that normally prior to filing a Request for Administrative Remedy, BP-229(13), you must attempt to informally resolve your complaint through your Correctional Counselor. Please follow the steps listed below:

1. State your complaint (single complaint or a reasonable number of closely related issues):

On 2-13-2019 I fell off the top bunk I was assigned to by Counselor Lewis due to her carelessness and failure to follow H.S. Dept.'s instructions. Also I advised her on 2-1-2019 when I arrived to FCI Florence and on 2-12-2019 during my first team that I have a lower bunk pass, because I have knee problems. This is negligence my medical files show all my requirements and I told her twice. There is now a conflict of interest between myself case manager and counselor, because they knew. see (Individualized Reentry- Program Review sheet 2-12-2019) Also from the injury I recieved 7 stitches in the head with (R) knee injury

(If more space is needed, you may use up to one letter size (8 1/2 x 11) continuation page. You must also submit one copy of supporting exhibits. (Exhibits will not be returned with the response to BP-229(13) responses.))

2. State what resolution you expect: ~~above staff~~ to be dealt with accordingly to PS 3420.11 no. (15) Endangering the safety of or causing injury to inmates through carelessness or failure to follow instructions.

Inmate's Signature: __Lesley T. Owens__        Date: __3-12-2019__

Counselor's Signature: __M.T__        Date: __7-30-19__

Department Involved: __UM__      Date Assigned: __7-30-19__   Due Date: _____

Department's Response regarding Complaint: Upon Arrival Into The Unit, You Were Assigned To A Lower Bunk But Refused To Live In The Cell. You Were Then Placed Into A Cell In An Upper Bunk.

Department Head Signature: __M.T__        Date: __7-30-19__
Unit Manager's Review: __M.T__        Date: __7-30-19__
Informally Resolved: _____        Date: _____

| | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | 3-12-19 | 7-30-19 | 5-10-19 | | 5-16-19 |
| TIME | 3:36pm | 1430 | 12:58pm | | |
| COUNSELOR | O. Onull | nT | De | | |

FCC 1330.18A         Administrative Remedy Program         Attachment 1

**BP-8**

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

BP-9

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Owens, Lesley T. | 22409-076 | O/B | FCI FLORENCE |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST**

On February 13, 3019 I sustained several injuries in which i filed BP-8 to on March 12, 2019. see attached BP-8. Before filing the BP-8 I had to wait atleast 4 weeks to heal from injury before I was able to adaquately perfect any informal resolution due to the head injury complications. On April 30, 2019 Unit Manager Tucker answered the attached BP-8 filed by myself as to Counselor C. Lewis of O/B violating PS 3420.11 **Endandering the safety of or causing injury to inmates through carelessness and failure to follow instructions.** In Unit Manager's response to the BP-8 he stated:( "Upon arrival into unit, you were assigned to a lower bunk but refused to live in the cell. You were then placed into a cell in an upper bunk.") The information Unit Manager Tucker provided is not in compliance with policy, because if an inmate refuses any BOP Health Service Medical Status instructions he or she would recieve an incident report. Also none of the attached records support Unit Manager's information he provided to resolve this matter. The information given is now in question. Why didn't I recieve an incident report if I refused my own medical instructions? Truth of the matter is I did not refuse and have never refused my own medical instructions which require me to have a lower bunk, because I have a medical issue that is now pending surgery on my right knee. Serveral inmates observed me go straight to cell 305 upper bunk upon my arrival initially in Unit O/B after telling Counselor in R&D I needed a lower bunk.

5-10-2019
DATE

(continued pages attached w/exhibits)

*Lesley T. Owens*
SIGNATURE OF REQUESTER

**Part B- RESPONSE**

Received
**MAY 16 2019**
Admin Remedy Office

*Thank you*

Plense see attyyhed response.

BP-9

DATE _____

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**THIRD COPY: RETURN TO INMATE**

CASE NUMBER: _____

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO    UNIT    INSTITUTION

SUBJECT: _____

_____
DATE

✪
PRINTED ON RECYCLED PAPER

_____
RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN

BP-229(13)
APRIL 1982



In opposing Unit Manager Tucker's response statement in the BP-8 there is no evidence recorded to support his allegations, because any refusal of recommended or offered treatment would be documented in Owens' health record. Per Program Statement 6031.04 no. (44) REFUSAL OF TREATMENT BY INMATES Owens would have been asked to sign a Medical Treatment Refusal Form ( BP-A0358 ) and would have been ensured that he understood the consequences of refusing any medicial proprosed treatment, refusal of such procedures would require an incident report per policy.

The truth of the matter is upon my arrival at FCI Florence I advised Counselor Lewis in R&D on February 1, 2019 that I have a lower bunk pass. I was assigned to her Unit O/B cell 305U after the fact I told her I have a lower bunk pass and after I had previous lower bunk assignment from FCC Lompoc that had not expired. see attached(BOP H.S. Medical Status of Lesley Owens #22409-076) On February 11, 2019 Conroy, S.DO of FCI Florence did an assessment of all my previous lower bunk requirements(pass) although it had not expired she approved a new lower bunk requirement(pass) for FCI Florence housing assign-ments. see attached (BOP H.S. Medical Status of Lesley Owens #22409-076 at FCI Florence generated by Conroy, S.DO, Florence H.S. Dept.).

On Feb. 12, 2019 was my initial Unit Team meeting with Counselor Lewis and Case Manager Mansfield of O/B Unit where I expressed my need again for a lower bunk. see attached (individualized Reentry Plan-Program sheet 2-12-2019).

On Feb. 13, 2019 between 12:00 midnight through 1:00 a.m. I fell off the upper bunk I was assigned to by Counselor Lewis while attempting to come down to utilize the toilet in the cell. During the fall I hit my forehead and right need on the floors in Unit O/B cell 305. From the fall I sustained a laceration on my forehead in length (3 cm) and depth (10 mm) with swelling. I also had to go to the emergency room to get seven stiches to close the laceration. My right knee was injured as well with pain and swelling which had already been previously diagnosis at FCC Lompoc through MRI to have meniscus tears laterally and medially along the ACL tears as well. In the matter the fall re-aggravated and possibly may even further tore my meniscus and ACL. SEE attached(record from St. Thomas More Hospital) also SEE attached(record from MRI diagnosis Lompoc Valley Medical Center). In the matter I also sustained a left elbow and neck injury. SEE attached records of X-Ray from FCI Florence took 2/21/2019 in connection with elbow and neck pain after fall on 2/13/2019.
After coming back from the hospital emergency room I was placed back inside the same cell where I was assigned to the upper bunk. Afraid to get on the upper bunk I was as-signed to, so I had to pull my mat off the upper bunk and sleep on the floor in the cell while my entire body was sore from the fall. I had to sleep on the floor two days after the injuries while sore, because Counselor Lewis did not move me until Feb. 15, 2019.
SEE attached(Change Sheet were I recieved cell change from 305 Upper bunk to 404 Lower Bunk)

Here counselor fail to assign me to a lower bunk constituting deliberate indifference, but also wanton negligence by counselor due to the fact Lewis refused to follow the medical instructions in my central file, all records show that I have lower bunk requirement(pass). The aforementioned shows that counselor's willful wanton negligence satisfies Program Statement No. 3420.11 see (15) Endangering the safety of or causing injury to staff, inmates, or other through carelessness or failure to follow instructions. see PS 3240.11 STANDARDS OF EMPLOYEE CONDUCT. This incident is on file with this agency as an Administrative claim for injury damages, see TRT-NCR-2019-04995
On Feb. 14, 2019 before I was re-assigned to cell 404 lower Lewis advised that my cell-mate inmate Jose Herrera 43680-424 was assigned to cell 305 lower without a lower bunk requirement(pass). See attach(Change sheet dated Feb. 14, 2019). There is no other change sheet that supports Unit Manager Tucker's response alleging I refused any cell upon my arrival Feb. 1, 2019. I'm requesting Lewis be disciplined according to PS 3420.11 offense no. 15 described above. In the matter my cellmate in cell 305 at that time Jose Herrera #43680-424 did not have a lower bunk assignment. See attached(BOP H.S. Status of Jose Herrera #43680-424). He and Bart Mays #27877-180 are witnesses in this matter. I request they both be interviewed. Also attached is statements of other inmates who witthessed me enter Unit O/B on intial arrival, Eric Hamilton 02992-029.

*BP-9 response from Warden*

**BP-229 Response**                                          **Case Number: 977813-F1**

Your Request for Administrative Remedy dated May 10, 2019, and accepted in the Administrative Remedy program on May 16, 2019, has been reviewed. Specifically, you allege a staff member is endangering the safety and causing injury to inmates through carelessness and failure to follow instructions. For relief, you are wanting to be left on a lower bunk.

A review of the issue raised in your Request for Administrative Remedy has been conducted. You claim that staff neglected you medical lower bunk pass this causing you to fall off your bed and injure yourself. A review of the housing unit logs has been conducted and it has been determined, you were placed in an upper bunk when you first arrived, however this was corrected soon after. In fact you have been assigned to a lower bunk for several months.

Staff are held to a high standard of treating inmates fairly, impartially, and humanely. Allegations of staff misconduct are taken very seriously. Your allegations will be thoroughly reviewed at the institution. If it is determined staff acted inappropriately, this issue will be forwarded to the proper investigative authority. However, inmates are not entitled to receive information on the outcome of staff investigations.

Accordingly, this response to your Request for Administrative Remedy is for informational purposes only. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

_____                     _8/21/19_
E. Williams, Warden                          Date

*BP-9 response*

U.S. Department of Justice  # 977813-R1          **Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Owens, Lesley T.                    22409-076          O/B          FCI FLORENCE
　　　LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A - REASON FOR APPEAL**

In this matter the first BP-10 was rejected because it was filed without the BP-9 and the Response to the BP-9 from the Warden. The reason it was filed without the aforementioned is because I was under the impression the institution was not going to respond due to the fact the institution failed to response within the policy time frames, so the response was late because it came atleast a month after the institutions extention. Due to the fact a response was finally given I request this renewed BP-10 be considered and disregard the one sent before the Warden's response which was late according to policy. The WARDEN'S response was recieved August 26,2019 finally given to me by Counselor C. Lewis, but the response was sign by Warden August 22,2019. The Wardens response advised without denial stating "A reviewzof the housing unit logs has been conducted and it has determined, you were placed in an upper bunk when you first arrived, however this was corrected soon after." Contray to that statement in the response I have attached the(bunk assignment change sheet) which is evidence in my behalf that contradicts the response the change sheet reflects on Febuary 14, 2019 I was reassigned from(305 upper) to (404 lower) which was effective Febuary 15,2019. That fact that I fell off an upper bunk on Febuary 13, 2019 contradicts the response, because counselor reassigned me after I fell of the(305 upper). SEE ATTACHED(CHANGE SHEET)

August 27, 2019                    Lesley T. Owens
　　DATE                              SIGNATURE OF REQUESTER

**Part B - RESPONSE**

BP-10

---

　　DATE                                          REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE                    CASE NUMBER: _____

**Part C - RECEIPT**
　　　　　　　　　　　　　　　　　　　　　　　　CASE NUMBER: _____

Return to: _____
　　　　LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

　　DATE                          SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN                                                              BP-230(13)
                                                                      JUNE 2002

CONTINUATION PAGE



The Warden's response was recieve 8-26-2019 late from the extention date. SEE attached Warden's response. The response states in part (For relief, you are wanting to be left on a lower bunk) I never indicated this for relief, because I was placed on a lower bunk after I fell off the top upper bunk 2-13-2019. The Warden's response conceded to the main fact of the matter stating (you were placed on an upper bunk when you first arrived).

The truth of the matter is upon my arrival at FCI Florence I advised Counselor Lewis in R&D on February 1, 2019 that I have a lower bunk pass. I was assigned to her Unit O/B cell 305U after the fact I told her I have a lower bunk pass and after I had previous lower bunk assignment from FCC Lompoc that had not expired. see attached(BOP H.S. Medical Status of Lesley Owens #22409-076) On February 11, 2019 Conroy, S.DO of FCI Florence did an assessment of all my previous lower bunk requirements(pass) although it had not expired she approved a new lower bunk requirement(pass) for FCI Florence housing assign- ments. see attached (BOP H.S. Medical Status of Lesley Owens #22409-076 at FCI Florence generated by Conroy, S.DO, Florence H.S. Dept.).

On Feb. 12, 2019 was my initial Unit Team meeting with Counselor Lewis and Case Manager Mansfield of O/B Unit where I expressed my need again for a lower bunk. see attached (individualized Reentry Plan-Program sheet 2-12-2019).

On Feb. 13, 2019 between 12:00 midnight through 1:00 a.m. I fell off the upper bunk I was assigned to by Counselor Lewis while attempting to come down to utilize the toilet in the cell. During the fall I hit my forehead and right need on the floors in Unit O/B cell 305. From the fall I sustained a laceration on my forehead in length (3 cm) and depth (10 mm) with swelling. I also had to go to the emergency room to get seven stiches to close the laceration. My right knee was injured as well with pain and swelling which had already been previously diagnosis at FCC Lompoc through MRI to have meniscus tears laterally and medially along the ACL tears as well. In the matter the fall re-aggravated and possibly may even further tore my meniscus and ACL. SEE attached(record from St. Thomas More Hospital) also SEE attached(record from MRI diagnosis Lompoc Valley Medical Center). In the matter I also sustained a left elbow and neck injury. SEE attached records of X-Ray from FCI Florence took 2/21/2019 in connection with elbow and neck pain after fall on 2/13/2019.
After coming back from the hospital emergency room I was placed back inside the same cell where I was assigned to the upper bunk. Afraid to get on the upper bunk I was as- signed to, so I had to pull my mat off the upper bunk and sleep on the floor in the cell while my entire body was sore from the fall. I had to sleep on the floor two days after the injuries while sore, because Counselor Lewis did not move me until Feb. 15, 2019. SEE attached(Change Sheet were I recieved cell change from 305 Upper bunk to 404 Lower Bunk)

Here counselor fail to assign me to a lower bunk constituting deliberate indifference, but also wanton negligence by counselor due to the fact Lewis refused to follow the medical instructions in my central file, all records show that I have lower bunk requirement(pass). The aforementioned shows that counselor's willful wanton negligence satisfies Program Statement No. 3420.11 see (15) Endangering the safety of or causing injury to staff, inmates, or other through carelessness or failure to follow instructions. see PS 3240.11 STANDARDS OF EMPLOYEE CONDUCT

On Feb. 14, 2019 before I was re-assigned to cell 404 lower Lewis advised that my cell- mate inmate Jose Herrera 43680-424 was assigned to cell 305 lower without a lower bunk requirement(pass). See attach(Change sheet dated Feb. 14, 2019). There is no other change sheet that supports Unit Manager Tucker's response alleging I refused any cell upon my arrival Feb. 1, 2019. I'm requesting Lewis be disciplined according to PS 3420.11 offense no. 15 described above. In the matter my cellmate in cell 305 at that time Jose Herrera #43680-424 did not have a lower bunk assignment. See attached(BOP H.S. Status of Jose Herrera #43680-424) Also see the following inmates statements: Eric Hamilton #02992-029, Torrence Douglas #53140-048, Bart Mays #27877-180 in support. All inmates were housed in Unit O/B Febuary 1, 2019 the date I arrived and assigned to 305 upper.

The Warden's response that is attached was not denied on the facts of the matter, but states ( Your allegations of staff misconduct will be thoroughly reviewed at the institution)

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

**Regional Administrative Remedy Appeal**
**Part B - Response**

---

**Administrative Remedy Number:  977813-R2**

---

This is in response to your Regional Administrative Remedy Appeal received in this office on September 6, 2019, in which you allege staff misconduct.  Specifically, you allege staff is endangering the safety of inmates and causing injury to them through carelessness and failure to follow instructions.  For relief, you request to be left on a lower bunk.

The information presented in your Regional Administrative Remedy Appeal and the Warden's response, dated August 22, 2018, was reviewed.  The Warden has accurately and adequately addressed the issues you raised.  A review of the housing unit logs has been conducted.  It has been determined you were placed in an upper bunk when you first arrived, but this was corrected soon after.  You have been assigned to a lower bunk for several months.

All allegations of staff misconduct are taken seriously and forwarded to appropriate staff for review.  A review into your allegation will be conducted and based on the outcome, the appropriate action will be taken.  However, you will not be privy to the information, findings, or outcome of the review.

Program Statement 3420.11, Standards of Employee Conduct, requires that employees conduct themselves in a manner which will not be demeaning to inmates, fellow employees, or others.

Based on the above information, this response to your Regional Administrative Remedy Appeal is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.  Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

_10-7-19_
Date

J. E. Krueger, Regional Director



StatRad Exam Requisition                                            Page 1 of 1



## FCI Florence FLF

| Patient: | **OWENS, LESLEY (Male)** | DOB: | 01/06/71 |
|---|---|---|---|
| Register#: | **22409-076** | Age: | 48 |
| Date: | 02/21/19 12:49 | Status: | OP |
| Slicecount: | 4 | | |
| History: | Left elbow pain particularly at posterior aspect (olecranon) after falling off top bunk on 2/13/19 | | |
| Priors: | | | |
| Exams: | FILM LEFT ELBOW | | |
| Referring Phy: | L.Fraboni APN-BC | | |
| Ordering Phy | L.Fraboni APN-BC | | |
| Ordering Phy #: | 7197849100 | | |
| Accession Numbers: 202#BOP00047485 | | | |

**Final Report**

**Exam: FILM LEFT ELBOW**

**HISTORY: Pain status post fall**

**TECHNIQUE: 4 views obtained**

**COMPARISON: No prior imaging available**

**FINDINGS:** There is no radiographic evidence for acute fracture. There is no joint space malalignment. There is minimal soft tissue swelling posterior to the left olecranon process. There is a punctate faint dystrophic calcification at the insertion of the left triceps tendon. Bone mineralization is normal for age.

**IMPRESSION:**
No radiographic evidence for an acute fracture or joint space malalignment.

Minimal soft tissue swelling posterior to the left elbow. There is a punctate faint dystrophic calcification at the insertion of the left triceps tendon.

Radiologist:                    Maurice Yu, MD

Study ready at 12:50 and initial results transmitted at 12:55

FLF

# St. Thomas More
# Orthopaedic Services

Jacob Patterson, MD
719 285-2319
Fax: 719-285-2647

✠ Centura Health.

DATE OF SERVICE: 07/09/2019

BOP NUMBER: 22409-076

SUBJECTIVE: This is a 48-year-old man who complains of left elbow discomfort. He took a hard fall off the bunk onto the point of his elbow and has developed swelling and discomfort. Says it interferes with his normal exercise.

DRUG ALLERGIES: None.

MEDICATION:
1. Albuterol.
2. Lisinopril.

MEDICAL HISTORY: He has hypertension.

REVIEW OF SYSTEMS: No mood or orientation problems, hearing or vision problems, chest pain, shortness of breath, bowel or bladder issues, bleeding problems, skin problems, focal neurologic deficits or other orthopedic complaints.

FAMILY HISTORY: No hereditary disease.

SOCIAL HISTORY: Has several years left to serve.

PHYSICAL EXAMINATION: VITAL SIGNS: Height 5 feet 9 inches, weight 195, blood pressure 139/88.
GENERAL: He is alert and oriented x3. His mood is appropriate. He is anicteric. Communicates well, he is breathing comfortably.
ABDOMEN: Moderately obese.
SKIN: Intact.
NEUROLOGIC: Intact.
EXTREMITIES: No peripheral edema.
MUSCULOSKELETAL: Orthopedic exam of his elbow shows he has some chronic appearing bursitis and some palpable bursa and spurring of the olecranon. He has full range of motion. No atrophy. No instability. No true elbow effusion.

IMAGING: X-rays unremarkable for fracture or arthritic change.

IMPRESSION: Chronic bursitis with fluid in the bursa.

---

Centura St. Thomas More Ortho
DOB: 01/06/1971.
UNIT #:
LOC: ( )
CORRECTIONAL VISIT NOTE

PT: OWENS, Lesley
ADM:
ACCOUNT #:
Jacob F Patterson, MD
(PAGE 1 of 2)

22409-076

# St. Thomas More
# Orthopaedic Services

Jacob Patterson, MD
719 285-2319
Fax: 719-285-2647

✚ Centura Health.

PLAN:  After sterile prep, we aspirated a few cubic centimeters of benign-appearing fluid from the bursa.  Recommend an elbow pad.  He can exercise as tolerated.  As long as he does not have direct contact to the tip of the olecranon, this should eventually resolve satisfactorily.

MODL/JOB#861859/845646454 D:07/09/2019 14:19:49 T:07/09/2019 14:36:26

Jacob F Patterson, MD

---

Centura St. Thomas More Ortho
DOB: 01/06/1971,
UNIT #:
LOC:   ( )
CORRECTIONAL VISIT NOTE

PT: OWENS, Lesley
ADM:
ACCOUNT #:
Jacob F Patterson, MD
(PAGE 2 of 2)

UpToDate®

Official reprint from UpToDate®
www.uptodate.com ©2020 UpToDate, Inc. and/or its affiliates. All Rights Reserved.


Wolters Kluwer

# Patient education: Bursitis (The Basics)

Written by the doctors and editors at UpToDate

## What is bursitis?

Bursitis is a condition that can cause pain or swelling next to a joint. Most of the time, bursitis happens around the shoulder, elbow, hip, or knee. It can also happen around other joints in the body.

A "bursa" is a small fluid-filled sac that sits near a bone. It cushions and protects nearby tissues when they rub on or slide over bones. These sacs, called "bursae," are found in many places throughout the body (figure 1 and figure 2). Bursitis happens when a bursa gets irritated and swollen. This can happen when a person:

- Moves a joint over and over again in the same way, over a short period of time
- Sits on a hard surface or stays in a position that presses on the bursa for a long time
- Has certain kinds of arthritis, such as gout or rheumatoid arthritis, that can affect their joints and bursae
- Gets hurt near a bursa
- Has an infection that spreads to a bursa

## What are the symptoms of bursitis?

Symptoms of bursitis can include:

- Pain or tenderness
- Swelling
- Trouble moving the joint

A bursa can get infected if a person gets a cut on the skin nearby. An infected bursa can cause a fever and the area around the bursa to be:

- Red
- Swollen
- Warm
- Painful

If you have any of the symptoms of an infected bursa, let your doctor or nurse know as soon as possible.

## Is there a test for bursitis?

Yes. Your doctor or nurse will ask about your symptoms and do an exam.

If you have symptoms of an infected bursa, your doctor might use a needle to remove some fluid from the bursa. Then he or she can do lab tests on the fluid to find out what is causing the bursitis, and if you need antibiotics.

He or she might also order imaging tests, such as an MRI scan or ultrasound. Imaging tests can create pictures of the inside of the body.

## What can I do to treat my bursitis?

To treat your bursitis, you can:

- Rest, cushion, and protect the area – Try not to irritate the area that hurts. For example, people with very painful shoulder bursitis might need to avoid lifting or carrying heavy things for a while. They might also need to wear an arm sling. People with bursitis behind the heel might need to use a thick heel pad. This can raise the heel so that it does not rub against the back of the shoe.

- Avoid positions that put pressure on the area – For example, people with bursitis in the front of the knee should avoid kneeling.

- Put ice on the area to reduce pain – Use a frozen bag of peas or a cold gel pack a few times a day for 20 minutes each time.

- Put heat on the area to reduce pain and stiffness – Do not use heat for more than 20 minutes at a time. Also, do not use anything too hot that could burn your skin.

## What other treatments might I have?

Your doctor or nurse might use other treatments, depending on your symptoms and where your bursitis is. Treatments can include:

- Pain-relieving medicines called "nonsteroidal antiinflammatory drugs" or "NSAIDs" – NSAIDs include ibuprofen (sample brand names: Advil, Motrin), and naproxen (sample brand name: Aleve). These medicines can reduce pain and prevent the bursae from getting swollen and painful.

- Steroid injections – Steroid medicines help reduce inflammation. These are **not** the same as the steroids some athletes take illegally. Doctors can inject steroids into the area of the bursitis to help reduce symptoms.

- Exercises and stretches – Your doctor or nurse might recommend that you work with a physical therapist. A physical therapist can teach you stretches and exercises to help reduce your symptoms.

- Surgery – A doctor can do surgery if other treatments do not work and you have had symptoms for a long time.

People with an infected bursa might also have treatment that includes:

- Antibiotics
- Having the fluid in the bursa drained – A doctor can drain the fluid using a needle and syringe, or by doing surgery.

## Can bursitis be prevented?

Yes. To help reduce the chance that you get bursitis, you can:

- Use cushions or pads to avoid putting too much pressure on joints – For example, people who garden can kneel on a kneeling pad. People who sit for a long time can sit on a cushioned chair.

- Take breaks, if you are using a certain joint too much

- Stop an activity or change the way you are doing it, if you feel pain

- Exercise

- Lose weight, if you are overweight

- Use good posture

## More on this topic

Patient education: Hip pain in older people (The Basics)

Patient education: Osteoarthritis (The Basics)

Patient education: Weight loss treatments (The Basics)

Patient education: Gout (The Basics)

Patient education: Knee pain (Beyond the Basics)

Patient education: Arthritis (Beyond the Basics)

Patient education: Elbow tendinopathy (tennis and golf elbow) (Beyond the Basics)

Patient education: Nonsteroidal antiinflammatory drugs (NSAIDs) (Beyond the Basics)

All topics are updated as new evidence becomes available and our peer review process is complete.

**This topic retrieved from UpToDate on:** Jan 30, 2020.

The content on the UpToDate website is not intended nor recommended as a substitute for medical advice, diagnosis, or treatment. Always seek the advice of your own physician or other qualified health care professional regarding any medical questions or conditions. The use of UpToDate content is governed by the UpToDate Terms of Use. ©2020 UpToDate, Inc. All rights reserved.

Topic 15727 Version 11.0

02/14/2019 8:03:24 AM -0700 FAXCOM                          PAGE 5   OF 15

FLF

St Thomas More Hospital     Owens, Lesley     22409-076
1338 Phay Ave               MRN: CEUE01311484, DOB: 1/6/1971, Sex: M
CANON CITY CO 81212         Adm: 2/13/2019, D/C: 2/13/2019

## Patient Demographics

| Name | Patient ID | SSN | Gender Identity | Birth Date |
|------|-----------|-----|-----------------|------------|
| Owens, Lesley | CEUE01311484 | xxx-xx-xxxx | Male | 01/06/71 (48 yrs) |

| Address | Phone | Email | Employer |
|---------|-------|-------|----------|
| po box 10269 JACKSONVILLE FL 32247 | 855-292-9526 (H) | | |

| Race | Occupation | Emp Status | |
|------|-----------|-----------|---|
| Black or African American | - | **Not Employed** | |

| Reg Status | PCP | Date Last Verified | Next Review Date |
|-----------|-----|-------------------|------------------|
| Verified | None Given Pcp | 02/13/19 | 04/14/19 |

| Marital Status | Religion | Language | |
|---------------|----------|----------|---|
| Single | No Preference | English | |

Emergency Contact 1
American Correction Healthcare (Legal Guard)
855-292-9526 (H)

## Hospital Account

| Name | Acct ID | Class | Status | Primary Coverage |
|------|---------|-------|--------|------------------|
| Owens, Lesley | 150033367 1 | Emergency | Discharged/Not Billed | AMERICAN CORRECTIONAL FLORENCE - FLORENCE AMERICAN CORRECTIONAL - ACH |

## Guarantor Account (for Hospital Account #1500333671)

| Name | Relation to Pt | Service Area | Active? | Acct Type |
|------|---------------|--------------|---------|-----------|
| Healthcare, American Correction | Legal Guardian | CEN | Yes | Correctional Facility |
| Address po box 10269 JACKSONVILLE, FL 32247 | Phone 855-292-9526(H) | | | |

## Coverage Information (for Hospital Account #1500333671)

| F/O Payor/Plan | | Precert # |
|----------------|---|-----------|
| AMERICAN CORRECTIONAL FLORENCE/FLORENCE AMERICAN CORRECTIONAL - ACH | | |
| Subscriber Owens, Lesley | | Subscriber # 22409076 |
| Address PO BOX 10269 ATTN: CLAIMS DEPARTMENT JACKSONVILLE, FL 32247 | Phone 855-292-9526 | |

## Admission Information

Arrival Date/Time: 02/13/2019 0246   Admit Date/Time: 02/13/2019 0246   IP Adm

Printed by Wauleah Larson at 2/14/19  7 38 AM                          Page 1

02/14/2019 8:03:24 AM -0700 FAXCOM                    PAGE 6   OF 15

|  | St Thomas More Hospital<br>1338 Phay Ave<br>CANON CITY CO 81212 | Owens, Lesley<br>MRN: CEUE01311484, DOB: 1/6/1971, Sex: M<br>Adm: 2/13/2019, D/C: 2/13/2019 |
|---|---|---|

## Admission Information (continued)

| | | | | Date/Time. | |
|---|---|---|---|---|---|
| Admission Type: | Emergency | Point of Origin: | Home | Admit Category: | |
| Means of Arrival: | Law Enforcement | Primary Service | Emergency Medicine | Secondary Service | N/A |
| Transfer Source | | Service Area | CENTURA SERVICE AREA | Unit | St. Thomas More Hospital Emergency Department |
| Admit Provider | | Attending Provider. | Paul Erik Numsen, DO | Referring Provider | |

## Discharge Information

| Discharge Date/Time | Discharge Disposition | Discharge Destination | Discharge Provider | Unit |
|---|---|---|---|---|
| 02/13/2019 0418 | *Home Or Self Care | Home | None | St. Thomas More Hospital Emergency Department |

| | |
|---|---|
| St Thomas More Hospital | Owens, Lesley |
| 1338 Phay Ave | MRN: CEUE01311484, DOB: 1/6/1971, Sex: M |
| CANON CITY CO 81212 | Adm 2/13/2019, D/C: 2/13/2019 |

## ED Provider Notes - ED Notes

**ED Provider Notes by Paul Erik Numsen, DO at 2/13/2019 2:46 AM**           Version 1 of 1

| | | |
|---|---|---|
| Author: Paul Erik Numsen, DO | Service — | Author Type: Physician |
| Filed: 2/13/2019 4:15 AM | Date of Service 2/13/2019 2 46 AM | Status Signed |
| Editor: Paul Erik Numsen, DO (Physician) | | |

   Procedure Orders
    1. Laceration Repair [237893190] ordered by Paul Erik Numsen, DO at 02/13/19 0311

Encounter Date:[PN 1]
02/13/19[PN.2]
Patients PCP is:[PN.1] NONE GIVEN PCP[PN 2]

**Chief Complaint:**[PN 1]

Fell out of bunk, forehead wound[PN 3]

**History of Present Illness:**

This is a[PN 1] 48 y.o.[PN 2] black[PN 1] male[PN 2] who suffered a[PN 1] forehead[PN 3] injury tonight.[PN.1] He fell out of his bunk, and struck the floor. No loss of consciousness, vomiting, neck or back pain. He has a mild headache but no confusion. No double vision, dental injury, nosebleed. He did injure his right knee with some swelling and pain, has had prior meniscal and ACL injury to that knee.[PN 3]
Onset: Sudden onset
Timing: Approximately midnight
Severity: Moderate
Context: Patient was ambulatory at the scene.

**Review of Systems:**

As noted in HPI above unless specified below:
**Constitutional:** No fever
**Eyes:** No eye pain
**ENT:** No sore throat
**Cardiovascular:** No chest pain
**Respiratory:** No hemoptysis
**Gastrointestinal:** No abdominal pain
**Genitourinary:** No dysuria
**Musculoskeletal:** No[PN.1] neck or[PN.3] back pain
**Hematologic:** No other bleeding
**Neurological:** No headache, no confusion
**Immunological:** No other joint pain.

**Past Medical, Surgical, Social, Family History & Medications:**

Past medical, surgical and family history was reviewed in the nursing notes.

Past Medical History: Denies
Social History: Incarcerated at FCI
Family History: Noncontributory[PN.1]

02/14/2019 8:03:24 AM −0700 FAXCOM                     PAGE 8    OF 15

| St Thomas More Hospital | Owens, Lesley |
|---|---|
| 1338 Phay Ave | MRN. CEUE01311484, DOB: 1/6/1971, Sex: M |
| CANON CITY CO 81212 | Adm  2/13/2019, D/C. 2/13/2019 |

### ED Provider Notes - ED Notes (continued)

**ED Provider Notes by Paul Erik Numsen, DO at 2/13/2019  2:46 AM (continued)**                Version 1 of 1

Past Medical History:
Diagnosis                                                            Date
  • Asthma
  • Hypertension


History reviewed. No pertinent surgical history.[PN.2]

**Social History:**[PN.1]
Social History

Tobacco Use
Smoking Status                     Never Smoker
Smokeless Tobacco                  Never Used

Social History

Substance and Sexual Activity
Alcohol Use                        Not Currently

Social History

Substance and Sexual Activity
Drug Use                           Never


No family history on file.

**Patient's Medications**
**New Prescriptions**
  No medications on file
**Previous Medications**
  LISINOPRIL                       Take 5 mg by mouth daily.
  (PRINIVIL,ZESTRIL) 5 MG
  TABLET
**Modified Medications**
  No medications on file
**Discontinued Medications**
  No medications on file[PN.2]


**Physical Exam:**[PN.1]

ED Triage Vitals [02/13/19 0317]

| Temp | Pulse | Resp | BP | SpO2 |
|---|---|---|---|---|
| 37.2 °C | 62 | 18 | (!) 147/92 | 95 % |
| (98.9 °F) | | | | |

| Temp Source | Heart Rate Source | Patient Position (BP) | BP Location | FiO2 (%) |
|---|---|---|---|---|
| Temporal | – | – | – | –[PN.2] |

Printed by Wauleah Larson at 2/14/19  7:38 AM                                Page 4

St Thomas More Hospital     Owens, Lesley
1338 Phay Ave               MRN: CEUE01311484, DOB: 1/6/1971, Sex: M
CANON CITY CO 81212         Adm 2/13/2019, D/C: 2/13/2019

**ED Provider Notes - ED Notes (continued)**

**ED Provider Notes by Paul Erik Numsen, DO at 2/13/2019 2:46 AM (continued)**          Version 1 of 1

General Appearance: Well developed.
**Head:** There is a[PN.1] 3[PN.4] cm[PN.1] stellate[PN.3] right forehead laceration with mild soft tissue swelling but no active bleeding, no wound contamination.[PN.1] The wound extends through the subcutaneous tissue, exposing the galea, but no exposed skull[PN.4].
**EENT:** Normal inspection, no signs of injury. EOMI, no nasal injury or epistaxis, no dental injury or mandibular malalignment or trismus.
**Neck:** Neck is supple with no midline tenderness. No significant lymphadenopathy.
**Respiratory:** There are no retractions, lungs are clear to auscultation. No focal thoracic tenderness.
**Cardiovascular:** Regular rate and rhythm.
**Gastrointestinal:** Abdomen is soft and non tender, no masses. No external signs of trauma.
**Back:** Normal inspection, no midline tenderness, no signs of trauma.
**Neurological:** No gross weakness. Sensory intact. Equal grip and plantar strength, clear speech, intact cranial nerves.
**Skin:** Warm and dry, no rashes, no petechiae.
**Musculoskeletal:** Extremities are symmetrical, full range of motion right knee without deformity or effusion. There is positive anterior drawer testing, chronic per patient. There is soft tissue swelling along the superior pole of the patella. No focal upper extremity or lower extremity tenderness.
**Psychiatric:** Normal affect, calm and cooperative, very pleasant.

**Medical decision making:** This gentleman has suffered a head injury, he does not take blood thinners, he has no focal neurologic findings. There is no indication for head CT imaging at this time, his cervical spine is cleared by nexus criteria. His tetanus booster was approximately 5 years ago, does not need another one tonight.

**Imaging/Laboratory/ECG Results:  (if applicable)**[PN.1]

XR Knee 3V Right
ED Interpretation
**DJD, neg for fx.**

Labs Reviewed - No data to display[PN.2]

**Procedures: (if applicable):**[PN.1]

**Laceration Repair**[PN.5]
Date/Time:[PN.1] **2/13/2019 3:11 AM**[PN.5]
Performed by:[PN.1] **Paul Erik Numsen, DO**[PN.5]
Authorized by:[PN.1] **Paul Erik Numsen, DO**[PN.5]

Consent:
  Consent obtained:[PN 1] **Verbal**[PN.5]
  Consent given by:[PN.1] **Patient**[PN.5]
  Risks discussed:[PN.1] **Infection, pain and poor cosmetic result**[PN.5]
Anesthesia (see MAR for exact dosages):
  Anesthesia method:[PN.1] **Local infiltration**[PN.5]

02/14/2019 8:03:24 AM -0700 FAXCOM                        PAGE 10   OF 15

St Thomas More Hospital        Owens, Lesley
1338 Phay Ave                  MRN: CEUE01311484, DOB: 1/6/1971, Sex: M
CANON CITY CO 81212            Adm: 2/13/2019, D/C: 2/13/2019

ED Provider Notes - ED Notes (continued)

ED Provider Notes by Paul Erik Numsen, DO at 2/13/2019 2:46 AM (continued)        Version 1 of 1

Local anesthetic:[PN.1] Lidocaine 1% WITH epi[PN.5]
Laceration details:
Location:[PN.1] Face[PN.5]
Face location:[PN 1] Forehead[PN.5]
Length (cm):[PN.1] 3[PN.4]
Depth (mm):[PN.1] 10[PN.4]
Repair type:
Repair type:[PN.1] Intermediate[PN.4]
Pre-procedure details:
Preparation:[PN.1] Patient was prepped and draped in usual sterile fashion[PN.4]
Exploration:
Wound exploration:[PN.1] wound explored through full range of motion[PN.4] and[PN.1] entire depth of wound probed and visualized[PN.4]
Wound extent:[PN.1] no fascia violation noted[PN.4] [PN.1] no foreign bodies/material noted[PN.4] [PN.1] no muscle damage noted[PN.4] [PN.1] no underlying fracture noted[PN.4] and[PN.1] no vascular damage noted[PN.4]
Contaminated:[PN.1] no[PN.4]
Treatment:
Area cleansed with:[PN 1] Soap and water[PN.4]
Amount of cleaning:[PN.1] Standard[PN 4]
Irrigation solution:[PN.1] Tap water[PN.4]
Irrigation volume:[PN.1] 50ml[PN.4]
Irrigation method:[PN.1] Syringe[PN 4]
Visualized foreign bodies/material removed:[PN.1] no[PN 4]
Subcutaneous repair:
Suture size:[PN 1] 4-0[PN.4]
Suture material:[PN.1] Vicryl[PN.4]
Number of sutures:[PN.1] 2[PN.4]
Skin repair:
Repair method:[PN.1] Sutures[PN.4]
Suture size:[PN.1] 5-0[PN.4]
Suture material:[PN.1] Nylon[PN.4]
Suture technique:[PN.1] Simple interrupted[PN.4]
Number of sutures:[PN 1] 7[PN 4]
Approximation:
Approximation:[PN.1] Close[PN.4]
Vermilion border:[PN 1] well-aligned[PN 4]
Post-procedure details:
Dressing:[PN.1] Antibiotic ointment[PN 4]
Patient tolerance of procedure:[PN 1] Tolerated well, no immediate complications[PN.4]

Discussion/Plan and Medical Decision Making:[PN 1]

**ED Course** as of Feb 13 0415
Wed Feb 13, 2019

| St Thomas More Hospital | Owens, Lesley |
|---|---|
| 1338 Phay Ave | MRN: CEUE01311484, DOB: 1/6/1971, Sex: M |
| CANON CITY CO 81212 | Adm: 2/13/2019, D/C: 2/13/2019 |

## ED Provider Notes - ED Notes (continued)

**ED Provider Notes by Paul Erik Numsen, DO at 2/13/2019 2:46 AM (continued)**     Version 1 of 1

0411     DJD, neg for fx, XR Knee 3V Right [PN]

**ED Course User Index**
[PN] Paul Erik Numsen, DO

Vitals:

|  | 02/13/19 0317 |
|---|---|
| BP: | (!) 147/92 |
| Pulse: | 62 |
| Resp: | 18 |
| Temp: | 37.2 °C (98.9 °F) |
| TempSrc: | Temporal |
| SpO2: | 95% |
| Weight: | 95.3 kg (210 lb) |
| Height: | 177.8 cm (5' 10")[PN.2] |

**Clinical Impression:**[PN.1]

Final diagnoses
Forehead laceration, initial encounter
Contusion of right knee, initial encounter[PN.2]

This chart is documented via voice recognition software. Every attempt is made to identify and correct errors in transcription, but errors occasionally persist.[PN.1]

Paul Erik Numsen, DO
02/13/19 0415
[PN.2]

Electronically Signed by Paul Erik Numsen, DO on 2/13/2019 4:15 AM
Attribution Key
PN.1 - Paul Erik Numsen, DO on 2/13/2019 2:47 AM
PN.2 - Paul Erik Numsen, DO on 2/13/2019 4:15 AM
PN.3 - Paul Erik Numsen, DO on 2/13/2019 3:07 AM
PN.4 - Paul Erik Numsen, DO on 2/13/2019 4:13 AM
PN.5 - Paul Erik Numsen, DO on 2/13/2019 3:11 AM

St Thomas More Hospital        Owens, Lesley
1338 Phay Ave                  MRN: CEUE01311484, DOB: 1/6/1971, Sex. M
CANON CITY CO 81212            Adm. 2/13/2019, D/C. 2/13/2019

| St Thomas More Hospital | Owens, Lesley |
|---|---|
| 1338 Phay Ave | MRN: CEUE01311484, DOB: 1/6/1971, Sex: M |
| CANON CITY CO 81212 | Adm: 2/13/2019, D/C: 2/13/2019 |

## All Results

Resulted 02/13/19 0917, Result status: Final result

### XR Knee 3V Right [237893188]

Ordering provider: Paul Erik Numsen, DO 02/13/19 0307    Resulted by: Raj Anand Jain, MD
Performed: 02/13/19 0358 - 02/13/19 0358            Accession number: XR201902130194
Resulting lab: POWERSCRIBE
Narrative:
EXAMINATION: XR KNEE 3 VIEW RIGHT on 2/13/2019.

INDICATION: 48-year-old male. Pain. Trauma.

COMPARISON: None

FINDINGS: Bones appear intact. No fracture identified. There moderate
tract frontal degenerative changes present throughout the knee. Small
knee joint effusion is present.

Impression:
No fracture identified. Degenerative changes as described.
If pain persists, recommend short-term follow-up radiographs.

WS: CEPUBSMC-IMG570
DICTATED BY: Jain, Raj    Date: 02/13/2019 08:43 MT
TRANSCRIBED DATE: 02/13/2019 08.43 MT

Resulted: 02/13/19 0246, Result status: Final result

### Laceration Repair [237893190]

Ordering provider: Paul Erik Numsen, DO 02/13/19 0311
Narrative
Paul Erik Numsen, DO    2/13/2019  4:15 AM
Laceration Repair
Date/Time: 2/13/2019 3:11 AM
Performed by: Paul Erik Numsen, DO
Authorized by: Paul Erik Numsen, DO

Consent:
  Consent obtained: Verbal
  Consent given by: Patient
  Risks discussed: Infection, pain and poor cosmetic result
Anesthesia (see MAR for exact dosages):
  Anesthesia method: Local infiltration
  Local anesthetic: Lidocaine 1% WITH epi
Laceration details:
  Location: Face
  Face location: Forehead
  Length (cm): 3
  Depth (mm): 10
Repair type:
  Repair type: Intermediate
Pre-procedure details:
  Preparation: Patient was prepped and draped in usual sterile fashion
Exploration:
  Wound exploration: wound explored through full range of motion and
entire depth of wound probed and visualized
  Wound extent: no fascia violation noted, no foreign bodies/material
noted, no muscle damage noted, no underlying fracture noted and no

| | |
|---|---|
| St Thomas More Hospital | Owens, Lesley |
| 1338 Phay Ave | MRN: CEUE01311484, DOB: 1/6/1971, Sex: M |
| CANON CITY CO 81212 | Adm: 2/13/2019, D/C: 2/13/2019 |

## All Results (continued)

Resulted 02/13/19 0246  Result status: Final
result

**Laceration Repair [237893190] (continued)**

vascular damage noted
 Contaminated: no
Treatment:
 Area cleansed with: Soap and water
 Amount of cleaning: Standard
 Irrigation solution: Tap water
 Irrigation volume: 50ml
 Irrigation method: Syringe
 Visualized foreign bodies/material removed: no
Subcutaneous repair:
 Suture size: 4-0
 Suture material: Vicryl
 Number of sutures: 2
Skin repair:
 Repair method: Sutures
 Suture size: 5-0
 Suture material: Nylon
 Suture technique: Simple interrupted
 Number of sutures: 7
Approximation:
 Approximation: Close
 Vermilion border: well-aligned
Post-procedure details:
 Dressing: Antibiotic ointment
 Patient tolerance of procedure: Tolerated well, no immediate
complications

**Testing Performed By**

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| **131 - PWR** | POWERSCRIBE | Unknown | Unknown | 07/28/15 1437 - Present |

**Results**

 No orders and results found

02/14/2019 8:03:24 AM -0700 FAXCOM                          PAGE 15    OF 15

St Thomas More Hospital       Owens, Lesley
1338 Phay Ave                 MRN: CEUE01311484, DOB: 1/6/1971, Sex: M
CANON CITY CO 81212           Adm  2/13/2019, D/C: 2/13/2019

## END OF REPORT

#22409-076


**LOMPOC VALLEY**
**MEDICAL CENTER**
*Lompoc Healthcare District*

Lompoc Valley Medical Center
1515 East Ocean Avenue
Lompoc, CA 93436
P: (805)737-3375
F: (805)875-8566

**Midcoast Imaging Medical Group**
David L. McAninch, MD
Duard W. Enoch III, MD

| | |
|---|---|
| Name: OWENS, LESLEY | Patient ID: 300448 |
| DOB: 1/6/1971 | Hosp Acct: 2184146 |
| Sex: Male | |
| | Pt Status: OutPatient |
| Referrer: JASPAL DHALIWAL MD, MD | Room: |
| Copy to: , USP | |
| | Acc #: 50726517 |
| Exam Date: 6/14/2018 12:43 PM | SCN#: 001NGB402 |
| Exam Name: KNEE RT C-, MRI | 73721 | |

EXAM.
MRI RIGHT KNEE NONCONTRAST

HISTORY:
Enthesopathy right knee. Ortho recommend mri of knee to evaluate ACL. Per Patient- Right knee lateral pain and swelling after basketball injury two years.

TECHNIQUE:
The MRI exam was performed on a GE 1.5T Signa HDi system. In order to address the clinical concerns, a variety of appropriate sequences in different planes were performed (sequencing on file).

COMPARISON:
None

FINDINGS:
- MEDIAL MENISCUS: Somewhat extruded with inferior flap tear posterior horn.
- LATERAL MENISCUS: The body and posterior horn are small and irregular presumably as the result of tear and displacement of a fragment which is not confidently visualized but may be at least partially in the intracondylar notch.
- CRUCIATE LIGAMENTS: ACL identified but appears lax and believed to be at least partially torn. PCL intact.
COLLATERAL LIGAMENTS: Normal without tear.
MEDIAL CARTILAGE: Chondromalacia particularly involving the posterior femoral condyle where there is grade 4 cartilage loss.
LATERAL CARTILAGE: Marked grade 4 cartilage loss involving most of the articular surfaces.
BONES: Large osteophytes particularly lateral with subchondral cyst formation.
PATELLOFEMORAL: Grade 1 2 chondromalacia patella.
FLUID: Small effusion

CONCLUSION:
- ACL appears lax and is believed to be partially torn.
- Torn menisci particularly lateral.
- Chondromalacia particularly marked in the lateral compartment.

Signed by:     DAVID L. MCANINCH, MD
Finalized Date: 6/14/2018 1:37 PM

Transcribed By:
Transcribed Date: 6/14/2018 1:31 PM

COPY

## Individualized Reentry Plan - Program Review - (Inmate Copy)

SEQUENCE: 01549495
Team.Date: 02-12-2019

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: OWENS, LESLEY 22409-076

| Facility: | FLF FLORENCE FCI | Proj. Rel. Date: | 04-11-2026 |
|---|---|---|---|
| Name: | OWENS, LESLEY | Proj. Rel. Mthd: | GCT REL |
| Register No.: | 22409-076 | DNA Status: | THP01134 / 03-01-2010 |
| Age: | 48 | | |
| Date of Birth: | 01-06-1971 | | |

*Date 2-12-2019 when Lewis and Mansfield met with me dicussing 911 below see Medical Duty Status*

### Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| FLF | FCI UNASSG | UNASSIGNED | 02-12-2019 |

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| FLF | ESL HAS | ENGLISH PROFICIENT | 08-12-2009 |
| FLF | GED EARNED | GED EARNED IN BOP | 10-15-2011 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| LOM | C | ACE SELF IMAGE CLASS | 06-07-2018 | 07-26-2018 |
| LOM | C | ACE SAFETY HAZZARD COM | 11-27-2017 | 12-06-2017 |
| EST | C | FCI DRAWING T/TH 9-10 30A | 06-17-2017 | 09-17-2017 |
| EST | C | CHANGE MANAGEMENT (#6 PG) | 05-02-2017 | 05-02-2017 |
| EST | C | INFECTIOUS DISEASE PREVT(HN#1) | 05-28-2015 | 05-28-2015 |
| HAZ | C | (PG) USP SMALL BUSINESS ACE | 12-22-2014 | 02-04-2015 |
| HAZ | C | (PG) WELDING INSPECTION ACE | 12-22-2014 | 02-04-2015 |
| HAZ | C | (PG) ACE SELF-DEVELOPMENT | 10-30-2014 | 10-30-2014 |
| MEM | C | SPARTAN CHEM CLEAN SAFETY PGM | 03-26-2013 | 06-11-2013 |
| MEM | C | BASKETBALL CLINIC RULES/REGS | 11-17-2012 | 11-19-2012 |
| MEM | C | LEGAL WRITING/CASE FORMAT-RPP6 | 01-30-2012 | 03-29-2012 |
| MEM | C | GED,M/W/F,130-330/MR.ROSENTHAL | 06-16-2011 | 10-15-2011 |
| THP | W | INTERMED GED 12 30-2 00 PM | 10-05-2009 | 06-01-2011 |

### Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|
| 12-12-2018 | 208   INTERFERING WITH SECRY DEVICES |
| 09-19-2018 | 224   ASSAULTING W/O SERIOUS INJURY |

### Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1-MH | CARE1-MENTAL HEALTH | 07-06-2010 |
| CARE2 | STABLE, CHRONIC CARE | 06-01-2018 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| LOWER BUNK | LOWER BUNK REQUIRED | 12-12-2018 |
| NO PAPER | NO PAPER MEDICAL RECORD | 04-10-2014 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 04-10-2014 |
| YES F/S | CLEARED FOR FOOD SERVICE | 04-10-2014 |

### Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DAP QUAL | RESIDENT DRUG TRMT QUALIFIED | 12-01-2017 |
| ED NONE | DRUG EDUCATION NONE | 08-11-2009 |
| INELIGIBLE | 18 USC 3621 RELEASE INELIGIBLE | 12-13-2017 |

### FRP Details

| Most Recent Payment Plan |
|---|
| |



## Individualized Reentry Plan - Program Review  (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: OWENS, LESLEY  22409-076

SEQUENCE: 01549495

Team Date: 02-12-2019

| Most Recent Payment Plan |
|---|

**FRP Assignment:**     **COMPLT**     **FINANC RESP-COMPLETED**          **Start: 11-13-2011**

Inmate Decision:     **AGREED**          **$25.00**               Frequency: **MONTHLY**

Payments past 6 months:          **$0.00**               Obligation Balance: **$0.00**

### Financial Obligations

| No. | Type | Amount | ( | Balance | Payable | Status |
|---|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | | | **NO ADJUSTMENTS MADE IN LAST 6 MONTHS** | | |

### Payment Details

Trust Fund Deposits - Past 6 months   $550 83                    Payments commensurate ?   Y

New Payment Plan:          | ** No data ** |

### Progress since last review

| Transfer from LOM. |
|---|

### Next Program Review Goals

| Obtain a SS Card and Birth Certificate by next review   Enroll in 7 Habits on the Inside by next review. |
|---|

### Long Term Goals

| Enroll in Doing Time With The Right Mind (DTRM) by 6/2020   Enroll in a College course or VT Program by 12/2021 |
|---|

### RRC/HC Placement:

| |
|---|

### Comments

| ** No notes entered ** |
|---|

# Bureau of Prisons
# Health Services
# Medical Duty Status

| | |
|---|---|
| Reg #:  22409-076 | Inmate Name:   OWENS, LESLEY |

__ Medical Hold: Do not transfer inmate for Medical Reason.

## Housing Status:

__ confined to the living quarters except __ meals __ pill line __ treatments  Exp. Date: _____

__ on complete bed rest: __ bathroom privileges only  Exp. Date: _____

X cell: — X cell on first floor — single cell _ X lower bunk _ __ airborne infection isolation  Exp. Date: __03/12/2019__

__ other: _____  Exp. Date: _____

## Physical Limitation/Restriction

__ all sports  Exp. Date: _____

__ weightlifting: __ upper body __ lower body  Exp. Date: _____

__ cardiovascular exercise: __ running __ jogging __ walking __ softball  Exp. Date: _____
__ football __ basketball __ handball __ stationary equipment

__ other: _____  Exp. Date: _____

## May have the following equipment in his / her possession:

| Equipment | Start Date | End Date | Return Date |
|---|---|---|---|
| Brace - knee | 05/17/2018 | 05/17/2019 | |
| Brace - wrist | 05/17/2018 | 05/17/2019 | |

## Work Restriction / Limitation:

Cleared for Food Service: __Yes_____

 X  No Restrictions

## Restraint Restrictions:

__ cuff only front __ no leg irons __ no face down position in four-point restraints

__ no CN gas __ no pepper spray

__ no cuff: __ right arm __ left arm __ right leg __ left leg  Exp. Date: _____

__ other: _____  Exp. Date: _____

**Comments:**  N/A

_____ Hoen, Liza PA-C _____   __12/12/2018__
Health Services Staff                                        Date

Inmate Name:   **OWENS, LESLEY**   Reg #:   **22409-076**   Quarters:   **Z02**

*ALL EXPIRATION DATES ARE AT 24:00*

# Bureau of Prisons
## Health Services
### Medical Duty Status

Reg #:  22409-076                         Inmate Name:   OWENS, LESLEY

---

**Housing Status**
___ confined to the living quarters except ___meals ___pill line ___treatments      Exp. Date: _____
___ on complete bed rest: ___bathroom privileges only                              Exp. Date: _____
X cell: __X cell on first floor___single cell__X lower bunk___airborne infection isolation  Exp. Date:__02/11/2020
___ other: _____              Exp. Date: _____

**Physical Limitation/Restriction**
___ all sports                                                                     Exp. Date: _____
___ weightlifting: ___upper body ___lower body                                     Exp. Date: _____
___ cardiovascular exercise: ___running ___jogging ___walking ___softball          Exp. Date: _____
                ___football ___basketball ___handball ___stationary equipment
___ other: _____                                        Exp. Date: _____

**May have the following equipment in his / her possession**

| Equipment | Start Date | End Date | Return Date |
|---|---|---|---|
| Brace - knee | 05/17/2018 | 05/17/2019 | |
| Brace - wrist | 05/17/2018 | 05/17/2019 | |

**Work Restriction / Limitation:**

Cleared for Food Service:  Yes_____

_X_ No Restrictions

**Comments:**  2/11/2019:  IM may have ACE wrap in his passion to use on his R knee

_____Conroy, S. DO_____     __02/11/2019__
Health Services Staff                                              Date

Inmate Name: _____OWENS, LESLEY_____     Reg #: __22409-076__  Quarters: __O03__

*ALL EXPIRATION DATES ARE AT 24:00*

```
FLFFU              *        FLORENCE FCI              *      02-14-2019
PAGE 001 OF 001                                              13:31:17
```



```
REG NO      NAME           QTRG EQ O**B                TIME   CATEGORY(2)   CATEGORY(3)
                           FROM        TO

QUARTERS    CHANGES EFFECTIVE   02-15-2019                     WRK ASGN     UNT ASGN
----------------------------------------------------------------------
29386-047   ADAMS          O03-701L    O03-110U    0001   FCI FOOD/P     OTERO
18440-023   BRANSON        O03-110L    O03-108L    0001   FCI REC AM     OTERO
40563-044   HALL           O03-544U    O04-404U    0001   FCI FOOD/A     OTERO
56479-177   MCCLURE        O03-703U    O03-110L    0001   FCI CP AM      OTERO
22409-076   OWENS          O03-305U    O04-404L    0001   FCI UNASSG     OTERO
06745-112   SINGLETON      O04-404L    O03-104L    0001   UNT ORD OB     OTERO
```

Date Lewis moved me from upper bunk after fall, that caused injuries.

```
G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

## STATEMENT OF WITTNESS JOSE HERRERRA #43680-424

On February 1, 2019 inmate Lesley Owens #22409-076 entered Unit O/B assigned

as my cellmate. His bunk assignment was 305 upper my bunk assignment was 305

lower. On February 13, 2019 on or around times 12:00 midnight between 1:00 a.m.

I was awaken by a loud noise in our cell when I turnt around to see it was Lesley

Owens laying on the floor face down with blood coming from the front of his head.

He told me that he had fallin off the top bunk.

Date: 05/09/2019

/s/ Jose Herrera
Jose Herrerra #43680-424



**Bureau of Prisons**     **\*\*SENSITIVE BUT UNCLASSIFIED\*\***
**Psychology Services**
**Clinical Intervention - Clinical Contact**

| Inmate Name: | OWENS, LESLEY | | | | Reg #: | 22409-076 |
|---|---|---|---|---|---|---|
| Date of Birth: | 01/06/1971 | Sex: | M | Facility: FLF | Unit Team: | OTERO |
| Date: | 04/25/2019 10:16 | Provider: | Martin, Heather PsyD | | | |

**Focus of Session**

Inmate OWENS was seen for a clinical contact per his request. Focus of the current encounter included his request to document memory and comprehension difficulties he experienced after an injury.

**Subjective/Objective Presentation**

Limits of confidentiality were reviewed with inmate OWENS and he verbalized his understanding.

An examination of mental status revealed that OWENS was oriented to person, place, time, and circumstances. He was dressed appropriately in an inmate uniform and was adequately groomed. His behavior and attitude were appropriate. He maintained intermittent eye contact throughout the interview. Motor movements were fluid and appropriate. Speech was organized. He articulated properly, enunciating his words clearly. Syntax was normal. He described his mood as "good" and he exhibited appropriate, congruent affect. His thought processes were logical. He denied current suicidal/self-injurious/homicidal ideation, intentions, and/or planning. Intellectual functioning appears to fall at least within the average range. No signs or symptoms of a thought disorder (such as neologisms, word salad, etc.) were present during the interview. He denied the presence of hallucinations, and no signs of delusions were noted.

Inmate OWENS requested to discuss memory difficulties he experienced after falling off the upper bunk in the housing unit. He reported falling off the upper bunk and hit his head on the floor, which required approximately 45 stitches. Inmate OWENS reported experiencing memory problems for approximately one week following his injury. He stated he knew his name and that he was incarcerated, however he experienced difficulty recalling additional information (i.e. he could not recall the nature of his instant offense, his inmate register number and PAC number). Inmate OWENS reported his memory returned one week after his injury and was achieved by reviewing his legal paperwork/other documents, which included information he was not able to recall in the previous week. During the current encounter, inmate OWENS' recent and remote memories appeared to be intact as evidenced by recalling previous institutions where he was designated, discussion of his current legal paperwork filings, the events that lead to his instant offense, and names of staff members/work supervisors at his previous institution. He also recalled a job he held prior to his incarceration and provided details of his duties while employed. Inmate OWENS also discussed his future plans for employment once he is released and where he may live.

Inmate OWENS stated since falling off the upper bunk, he has experienced difficulty with comprehension, specifically when reading. He stated his comprehension continues to improve, however he believes it is "still catching up to where I was before".

During the current encounter, inmate OWENS did not indicate or appear to be overly concerned about the current status of his memory. He did state he noticed a decline in his reading comprehension after he sustained an injury after falling out of the upper bunk in the housing unit. Inmate OWENS also inquired how he might have access to documentation of the current encounter.

**Intervention(s)**

Inmate OWENS was provided supportive counseling during the current encounter. His recent and remote memory functions were assessed and appeared to be intact. Inmate OWENS was informed of procedures to request documents from his Psychology record and he verbalized his understanding. No need for accommodations were identified during the current encounter.

**Progress/Plan**

No follow up contact scheduled at this time. Procedures to request routine and emergent mental health services were reviewed with inmate OWENS and he verbalized his understanding.



Clerk of the Court
United States Courthouse
901 19th Street Room A105
Denver, CO 80294-3589

US OFFICIAL MAIL
PENALTY FOR
PRIVATE USE $300
$ 000.000
PITNEY BOWES
02 1P
0001126313   APR 15 2020
MAILED FROM ZIP CODE 81226

FLORENCE   APR 15 2020

Lesley T. Owens 22409-076
United States Penitentiary 4/10/20
P.O. Box 7000
Florence, CO 81226

Legal Mail

7017 1000 0000 0131 4987

CERTIFIED MAIL
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

