IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-01094-RBJ-NRN

LESLEY T. OWENS,

    Plaintiff,

v.

UNITED STATE OF AMERICA,
C. LEWIS, Counselor, and
Mansfield, Case Manager,

    Defendants.

---

## ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS

---

This matter is before the Court on the May 6, 2021 recommendation of Magistrate Judge N. Reid Neureiter, ECF No. 85. The recommendation addresses defendants' partial motion to dismiss [ECF No. 73]. Judge Neureiter recommended that I deny the partial motion to dismiss in its entirety. ECF No. 97 at 2. The recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). After de novo review, I adopt the recommendation in part. I therefore GRANT in part and DENY in part defendants' motion to dismiss.

### I. BACKGROUND

I adopt the recitation of facts in Judge Neureiter's recommendation, which are based on plaintiff's third amended complaint. *See* ECF No. 71. Mr. Owens is an inmate of the Federal Bureau of Prisons ("BOP") at the United States Penitentiary in Florence, Colorado ("USP"). Defendants Lewis and Mansfield are BOP employees at USP.

1

On February 1, 2019, Mr. Owens told defendants Lewis and Mansfield that he had been given a "medical duty status" and needed to be assigned a lower bunk as a result of an injured knee. *Id.* at 11–13. On February 12, 2019 Mr. Owens reiterated this need to be assigned to a lower bunk. He gave defendants a copy of a "medical duty status" form, dated February 11, 2019, that specifically indicated he was supposed to be assigned a lower bunk. *Id.* at 18. In addition, Mr. Owens alleges that defendants Lewis and Mansfield generated and signed an Individualized Reentry Plan dated February 12, 2019 that indicated he had a "lower bunk required" assignment that began in December 2018. *Id.* at 19. Despite this, Lewis and Mansfield assigned Mr. Owens to an upper bunk. *Id.* at 12–13.

On the night of February 13, 2019 Mr. Owens fell off the upper bunk while attempting to climb down. He sustained a head injury and cracked elbow, and he re-injured his knee. *Id.* at 13. After he was treated for his injuries, Mr. Owens was put back in his cell on an upper bunk assignment. Fearing he would fall and hurt himself again, Mr. Owens slept on the floor for several nights until he was finally assigned a lower bunk. *Id.* at 15–16.

Plaintiff filed this case on April 17, 2020. *Id.* Pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), plaintiff brings a claim for deliberate indifference in violation of the Eighth Amendment against the individual defendants. Pursuant to the Federal Tort Claims Act ("FTCA"), plaintiff also brings two claims against the United States: (1) negligence; and (2) violation of the Colorado Premises Liability Act, C.R.S. § 13-21-115 ("CPLA"). Defendants moved to dismiss the *Bivens* claim and the CPLA claim on February 18, 2021. ECF No. 73. I referred the matter to Judge Neureiter, and after considering the parties' briefs and oral argument he issued his recommendation on May 6, 2021. ECF No. 85.

He recommended denying the motion entirely. Defendants filed their objections on May 27, 2021. ECF No. 90. Plaintiff responded on June 14, 2021. ECF No. 96.

## II. ANALYSIS

When a magistrate judge makes a recommendation on a dispositive motion, the district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is sufficiently specific if it "focus[es] the district court's attention on the factual and legal issues that are truly in dispute." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

### A. Claim against individual defendants

Defendants asked this Court to dismiss plaintiff's Eighth Amendment deliberate indifference claim on the bases that a *Bivens* remedy is not available, and that defendants are entitled to qualified immunity. ECF No. 73 at 3–12. Judge Neureiter rejected both of these arguments, concluding that the claim should go forward. Defendants object to the recommendation. They argue that Judge Neureiter erred in finding that plaintiff's *Bivens* claim does not present a new context, and that he erred in denying qualified immunity.

1. Whether a *Bivens* remedy is available

The Supreme Court has recognized a *Bivens* remedy in three prior cases: (1) *Bivens* itself, for Fourth Amendment unreasonable search and seizure; (2) *Davis v. Passman*, 442 U.S. 228 (1979), for Fifth Amendment equal-protection violations in connection with gender discrimination by a Congressman; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), for Eighth Amendment deliberate indifference to serious medical needs. Defendants argue that this case differs in a meaningful way from *Carlson* because it involves non-medical personnel instead of

3

medical personnel, and that it thus arises in a new context.

Judge Neureiter found the distinction between non-medical and medical personnel not meaningful. ECF No. 85 at 6. I agree. As the cases that Judge Neureiter cited show, courts addressing the question of whether a *Bivens* remedy exists for deliberate indifference to medical needs have not focused on whether medical or non-medical personnel were the alleged violators. *Id.* None of the deliberate indifference cases defendants point to in their objections did so either. *See Jones v. Knight*, No. 120CV01465JPHTAB, 2020 WL 3440472 (S.D. Ind. June 22, 2020); *Hill v. Phan*, No. 13-CV-0583, 2016 WL 4194205 (W.D. La. July 13, 2016), *report and recommendation adopted*, No. CV 13-0583, 2016 WL 4187037 (W.D. La. Aug. 8, 2016); *Johnson v. Sinkston*, No. CIV.A.04-0707 CG M, 2006 WL 752991 (S.D. Ala. Mar. 22, 2006); *Podkulski v. Doe*, No. 11-CV-102-JL, 2013 WL 3475229 (D.N.H. July 9, 2013); *Hickman v. Ciccati*, No. 01 CV 2003-STM, 2004 WL 1987234 (S.D. Cal. Sept. 2, 2004). Though defendants cite those authorities for a different proposition, it is telling they have pointed to no law, from any jurisdiction, suggesting the medical versus non-medical personnel distinction is meaningful.

More importantly, the factual differences between *Carlson* and plaintiff's situation here are insufficient to make this case arise in a new context. It is not just that plaintiff's claim and the constitutional right at issue are the same as in *Carlson*, as Judge Neureiter pointed out. ECF No. 85 at 6. Courts in this circuit have found a *Bivens* remedy available for deliberate indifference claims that are equally as dissimilar to the facts in *Carlson* as here. For example, in *Smith* the Tenth Court found a *Bivens* remedy available for a deliberate indifference to medical needs claim by an inmate that suffered harm from asbestos exposure. *Smith v. United States*, 561 F.3d 1090, 1103 (10th Cir. 2009). Likewise, in *Chapman* the Tenth Circuit affirmed Judge

Daniel's decision that a deliberate indifference claim brought under *Bivens* could go forward. There the plaintiff alleged that defendants had delayed treating his Type I diabetes on multiple occasions. *Chapman v. Santini*, 805 F. App'x 548, 553 (10th Cir. 2020) (unpublished).

Similarly, other circuits have also found that claims with facts less similar to *Carlson* did not present new *Bivens* contexts. *See, e.g.*, *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018) (noting "an implied right of action against a federal actor who shows deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment" in case involving inadequate dental care); *Reid v. United States*, 825 F. App'x 442, 444 (9th Cir. 2020) (unpublished) (concluding that defendants' refusal to treat plaintiff's injuries from hard restraints did not present a new *Bivens* context because "[i]n *Carlson*, the Supreme Court recognized an Eighth Amendment *Bivens* claim based on prisoner mistreatment.").

Defendants next assert that this case is closest to *Lovett*, in which Judge Brimmer concluded that a refusal to accommodate a plaintiff's gluten-free dietary restrictions presented a new context under *Bivens*. Defendant tries to paint that case as similar to plaintiff's because it concerned non-medical personnel's allegedly ignoring the instructions of medical personnel. But nowhere in its *Bivens* analysis does the court say that plaintiff's celiac disease and related dietary restriction were medically diagnosed or required, as is the case here. *Lovett v. Ruda*, No. 17-CV-02010-PAB-KLM, 2018 WL 4659111 (D. Colo. Sept. 28, 2018). The court thus concluded that while *Carlson* involved a claim based on "defendants' failure to provide the decedent with competent medical care for his severe asthma while incarcerated," the case before it involved a claim "based on defendants' failure to accommodate plaintiff's dietary restrictions." *Id.* at *8 (internal citations omitted). By contrast, here Judge Neureiter found, and I agree, that plaintiff

has pled deprivation of medical treatment in the form of defendants' ignoring a specific medical instruction. *Lovett* is thus not persuasive.

Like Judge Neureiter, I am also unpersuaded that Mr. Owens' claim is more similar to a conditions of confinement claim. I too have reviewed the cases defendants cited in their motion for this assertion, and I concur that they are distinguishable. Judge Neureiter pointed out that *Abdo v. Balsick*, the primary of defendants' authorities, characterized the plaintiff's claims quite differently than Mr. Owens' facts. The court there said the plaintiff "sought treatment solely for injuries that he sustained when prison guards responded to a perceived safety threat by using deterrent spray." *Abdo v. Balsick*, No. 18-CV-01622-KMT, 2019 WL 6726230, at *6 (D. Colo. Dec. 11, 2019), *reconsideration denied sub nom. Abdo v. United States*, No. 18-CV-01622-KMT, 2020 WL 227747 (D. Colo. Jan. 15, 2020). The facts constituted a new context under *Bivens* because guards were responding to a prison disturbance when the inmate was injured. *Id.* By contrast, the *Abdo* court described the claim in *Carlson* as one "where the allegedly subpar treatment related to an inmate's chronic medical condition." *Id.* Mr. Owens' claim is similar to *Carlson*'s in that defendants refused to treat him properly—by rejecting his medically-prescribed bottom bunk designation—for a chronic condition, his knee injury. *Abdo*'s reading of *Carlson* thus supports, not undermines, the conclusion that plaintiff has a *Bivens* remedy here.

Similarly, the new cases defendants cite in their objections are also distinguishable. In most of them there was no medical requirement for the plaintiff to be assigned a bottom bunk, unlike here. *Jones*, 2020 WL 3440472, at *2 (permitting bottom-bunk claim for injunctive relief against prison warden to proceed without ever mentioning whether bottom bunk was medically required); *Podkulski*, 2013 WL 3475229, at *2 (permitting bottom bunk-related claim to proceed

6

despite lack of allegations that seizure disorder was medically confirmed or that bottom bunk was medically prescribed); *Hill*, 2016 WL 4194205, at *2 (rejecting claim for deliberate indifference because there was no allegation plaintiff medically required a lower bunk or suffered any harm); *Johnson*, 2006 WL 752991, at *2 (same). Only in *Hickman* did the court treat a lower-bunk claim as one for conditions of confinement despite plaintiff's having a medical "chrono" requiring a bottom bunk assignment. *Hickman*, 2004 WL 1987234, at *4. And in both *Hill* and *Johnson* the courts indicated that they read the claim as one for conditions of confinement *or* denial of medical care—not just the former.

In sum, I agree with Judge Neureiter that plaintiff's claim for deliberate indifference to medical treatment does not present a new context under *Bivens*. I conclude that a *Bivens* remedy is available. I thus move to my analysis of qualified immunity.

    2. <u>Whether the individual defendants are entitled to qualified immunity</u>

The individual defendants contend that they have qualified immunity because plaintiff has insufficiently alleged the subjective component of deliberate indifference, and because the law was not clearly established at the time of the alleged violation. Judge Neureiter pointed to numerous facts alleged by plaintiff that satisfy the subjective component of his deliberate indifference claim. These included that prison medical staff determined he required a lower bunk because of his knee injury; that Mr. Owens advised both Mansfield and Lewis of his lower bunk medical duty status; that he showed them both a copy of his status form from the health services staff; and that he told both defendants of his knee injury. ECF No. 85 at 10–11 (citing ECF Nos. 71 at 12; 78 at 4). I agree with Judge Neureiter that, construed in the light most favorable to plaintiff, these facts are sufficient at the motion to dismiss stage to establish the

individual defendants knew of and disregarded a substantial risk of serious harm.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976).

Defendants object to Judge Neureiter's recommendation on the basis that the complaint "contains no indication that either defendant had any information about the nature of the medical condition that warranted the assignment."  ECF No. 90 at 9–10.  As indicated by the facts from plaintiff's complaint that I just referenced, this is simply untrue.  Defendants ask me to ignore reasonable inferences about their state of mind and to not construe the allegations in plaintiff's favor.  Yet the law requires me do both of these things.  After reviewing the operative complaint and exhibits, I agree with Judge Neureiter that plaintiff has sufficiently alleged a constitutional violation under the Eighth Amendment.

Defendants next argue that plaintiff has not alleged that they violated a clearly established right.  Judge Neureiter concluded that defendants' defense of qualified immunity was premature and should be addressed on a better-developed record.  He cited to Chief Judge Brimmer's analysis in *Doty* which concluded it was "clearly establish[ed] that a prison official who disregards without justification the instructions of a medical professional regarding the care and treatment of an inmate, thereby subjecting the inmate to an excessive risk of serious harm, may be liable under the Eighth Amendment."  *Doty v. City & Cty. of Broomfield*, No. 12-CV-01340-PAB-MJW, 2013 WL 5510646, at *8 (D. Colo. Oct. 4, 2013).  Defendants insist that a right cannot be clearly established based on "a single case decided by this Court" whose facts are "markedly dissimilar" from the facts here.  ECF No. 90 at 11.  Defendants miss the point.  It is not *Doty* itself that clearly establishes the applicable law on deliberate indifference.  It is the cases on which *Doty* relies that make the right at issue clearly established.  *See Estelle*, 429 U.S.

8

at 104–05; *Twyman v. Crisp*, 584 F.2d 352, 354–55 (10th Cir. 1978) ("[A] properly pleaded claim of interference by prison officials with prescribed medical treatment is cognizable under § 1983."); *Martinez v. Garden*, 430 F.3d 1302, 1305 (10th Cir. 2005) ("Knowledge of [plaintiff inmate's] medical condition, coupled with the alleged failure to inform him of medical appointments or to arrange transportation, may give rise to an inference that defendants acted with deliberate indifference.").

While clearly established law should not be defined at a high level of generality, *White v. Pauly*, 137 S. Ct. 548, 552 (2017), the Tenth Circuit has repeatedly counseled that "[w]e cannot find qualified immunity whenever we have a new fact pattern." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). Defendants ask me to do exactly that—it is clearly established that refusing to provide a plaintiff prescribed medical treatment is a constitutional violation, but they ask me to grant qualified immunity because the Tenth Circuit has yet to rule that refusing to assign plaintiff a lower bunk despite it being prescribed medical treatment is a constitutional violation. This level of factual distinction is not a basis for granting qualified immunity. Furthermore, defendants' attempt to distinguish *Doty* on its facts is unavailing. In *Doty* the plaintiff said he had a history of seizures; a nurse instructed he be placed in a lower bunk; and plaintiff was placed in an upper bunk, had a seizure, fell out, and hit his head. *Doty*, 2013 WL 5510646, at *1–3. The facts in *Doty* are markedly *similar* to those here, in my opinion. The fact that Judge Brimmer denied qualified immunity strongly suggests I should too, even if *Doty* itself does not establish the constitutional right in question.

In further support of their position, defendants point to two unpublished Tenth Circuit decisions on bunk assignment claims. The first is *Hron*, in which a plaintiff sued prison officials

claiming that their failure to assign him a lower bunk was a denial of adequate medical care under the Eighth Amendment. *Hron v. Jenkins*, 173 F.3d 863 (10th Cir. 1999) (unpublished) (Table). But the court there never concluded that the plaintiff's allegations could not be a constitutional violation as a matter of law. Instead, it granted summary judgment for defendants because the plaintiff failed to produce evidence that they had subjective knowledge of the risk plaintiff faced. *Id.* Similarly, in *Montez* the court affirmed summary judgment for defendants because the "need for a bottom-bunk assignment based on his 15-year-old hernia operation was not obvious" to defendants, and thus there was insufficient evidence they disregarded an excessive risk to his health. *Montez v. Lampert*, 595 F. App'x 789, 792 (10th Cir. 2014) (unpublished). The court never ruled that such facts could not state a claim for deliberate indifference as a matter of law.

I align with both Judge Neureiter's recommendation and Judge Brimmer's analysis in *Doty* in concluding that the law was clearly established at the time of plaintiff's alleged Eighth Amendment violation. Defendants are not entitled to qualified immunity at this stage. The Court thus DENIES defendants' motion to dismiss as to the deliberate indifference claim.

### B. Claim against the United States under the Colorado Premises Liability Act

The United States seeks dismissal of only the CPLA claim asserted against it. In any civil suit "against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable only as provided in subsection (3) of [the CPLA]." C.R.S. § 13-21-115(2). Subsection (3) says in relevant part, "an invitee may recover for damages caused by the landowner's unreasonable failure to exercise

reasonable care to protect against dangers of which he actually knew or should have known." *Id.* § 13-21-115(3)(c)(I).

Defendants do not contest that the United States is a landowner under the statute, nor do they dispute that plaintiff is an invitee. ECF No. 73 at 13. Instead, defendants argue that I must dismiss plaintiff's CPLA claim because his complaint does not identify any "danger" on the government's property. They contend that plaintiff's allegations regarding the top bunk and its relation to his injuries "are not about the premises, but about the people." *Id.* at 14. They made the same argument in their motion. Judge Neureiter disagreed. He wrote that under either of the definitions defendants used for the word "danger," plaintiff had pled sufficient facts to establish a CPLA claim because defendants knew of the "unreasonable risk to Mr. Owens" that the upper bunk created given his knee injury.[1] ECF No. 85 at 12. Defendants object on the basis that Judge Neureiter did not rebut or otherwise address their motion to dismiss argument.

In this instance, I respectfully disagree with Judge Neureiter. Having reviewed the CPLA and cases brought pursuant to the statute, I do not believe that plaintiff has alleged his upper bunk can properly be considered a "danger" under C.R.S. § 13-21-115(3). The phrasing Judge Neureiter used in his conclusion is telling—he wrote that defendants knew of the "unreasonable risk *to Mr. Owens*." The danger was thus to plaintiff specifically; it was not a stand-alone danger. True, the two broad definitions of "danger" cited by defendants could encompass a top bunk. But the top bunk only posed a danger because of a condition specific to plaintiff, i.e., his

---

[1] One of these definitions was from the Colorado Government Immunity Act ("CGIA"), defining "[d]angerous condition" as "a physical condition of a facility or the use thereof that constitutes an unreasonable risk to the health or safety of the public . . . ." C.R.S. § 24-10-103(1.3). The other was from a Colorado Ski Safety Act case called *Fleury*, which stated that the common meaning of danger is a "[p]eril; exposure to harm, loss, pain, or other negative result." *Fleury v. IntraWest Winter Park Operations Corp.*, 411 P.3d 81, 85 (Colo. App. 2014), *aff'd*, 372 P.3d 349 (Colo. 2016) (quoting Black's Law Dictionary 450 (9th ed. 2009)).

knee injury.  Plaintiff does not allege that the upper bunk posed a danger to any and all inmates or other individuals in the prison, regardless of their physical condition.  It is the combination of the upper bunk and plaintiff's injury that creates the danger, not the upper bunk on its own.

Virtually all of the CPLA claims I have read involve a circumstance, activity, or condition that has the potential to harm anyone, not one that is dangerous only because of a plaintiff's unique characteristics.  For example, *Nelson*, in which the court adopted the same definitions of danger from the CGIA and *Fleur* as defendants use, involved a sinkhole or "washout" in the middle of a bike path.  The sinkhole caused plaintiff to be flung from his bicycle onto asphalt, an event that could have happened to anyone.  *Nelson v. United States*, 256 F. Supp. 3d 1136, 1141 (D. Colo. 2017), *aff'd*, 915 F.3d 1243 (10th Cir. 2019).  The authority Judge Neureiter cited on a CPLA claim by an inmate against a correctional facility also involved a condition that posed danger to everyone.  There, the inmate brought a slip-and-fall case after he fell and injured his knee while walking through a wet hallway.  *Rodriguez-Aguirre v. United States*, No. 15-CV-00465-KLM, 2016 WL 1046247, at *1 (D. Colo. Mar. 16, 2016).

Similarly, in another case an inmate brought a CPLA claim against a prison after he accidentally knocked the switch of a table saw in the maintenance shop, causing severe injuries to his hand.  *Carson v. Corr. Corp. of Am.*, No. 10-CV-01329-REB-BNB, 2011 WL 1656509, at *1 (D. Colo. May 3, 2011).  Other examples abound.  *See, e.g.*, *Traynom v. Cinemark USA, Inc.*, 940 F. Supp. 2d 1339, 1345 (D. Colo. 2013) (identifying danger of criminal activities known to occur at or near theater with no alarms, no door locks, and no security personnel present in 2012 Aurora shooting case); *Wycoff v. Grace Cmty. Church of Assemblies of God*, 251 P.3d 1260, 1263 (Colo. App. 2010) (involving ice tubing collision with large boulder on defendant's

property); *McIntire v. Trammell Crow, Inc.*, 172 P.3d 977, 980 (Colo. App. 2007) (involving inadequately moored pulley that fell and struck plaintiff in head).

Plaintiff has not alleged sufficient facts to support a claim against the United States under the CPLA. I therefore GRANT defendants' motion to dismiss as to the CPLA claim.

## ORDER

1. Judge Neureiter's recommendation, ECF No. 85, is ACCEPTED AND ADOPTED in part and REJECTED in part.
2. Defendants' partial motion to dismiss, ECF No. 73, is DENIED as to the Eighth Amendment claim against the individual defendants. It is GRANTED as to the Colorado Premises Liability Act claim against the United States.

DATED this 2nd day of August, 2021.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge